EDWARD O. COOKE *vs.* ROSCOE M. PLAISTED.

Suffolk.   January 10, 1900. — June 20, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract for Services as Attorney — Instructions — Declaration in Set-off — Assignment for Benefit of Creditors — Reasonable Compensation — Termination of Trust — Auditor's Report — Evidence as to Foreclosure Proceedings — Testimony of Expert upon Mental Condition.*

If, in an action for services performed and disbursements made, as an attorney at law, for the defendant, the account is a long one and the items relate to many different matters, the judge cannot be required to instruct the jury in regard to each item, nor in regard to all of the various aspects in which it is possible that the jury may view the different items.   What he is required to do is to state for the guidance of the jury the rules of law in regard to the right of an attorney to recover for services, and in regard to the defendant's liability therefor, and what it is necessary for the plaintiff to show in order to maintain his action, accompanied by such explanations and references to the nature of the services rendered and the relations of the parties and the matters set up in defence, including the declaration in set-off, as will enable the jury to understand and apply the rules thus laid down ; and having thus instructed the jury, he cannot be required to instruct them as to the various aspects in which the plaintiff may have acted as attorney for the defendant in connection with matters relating to an assignment of his property by the defendant to the plaintiff for the benefit of the defendant's creditors and to the trust created thereby, and to his right to recover reasonable compensation for services so performed.

If, in an action for services performed and disbursements made, as an attorney at law, for the defendant, the fair import of the charge was, and the jury must have so understood it, that if the plaintiff was employed as attorney by the defendant, and performed services for him in that capacity in relation to any matters, he was entitled, in the absence of any special agreement, to a reasonable compensation therefor, taking into account the nature and importance of the services rendered, there being no contention by the defendant that to the extent to which the plaintiff's services and expenditures as attorney related to property covered by an assignment of the defendant's property to the plaintiff for the benefit of creditors, the plaintiff was obliged to resort to such property for payment, certain requests for rulings to the effect that if, after the termination of the assignment, the defendant requested the plaintiff to render service or expend money in relation to the property covered by the assignment, the defendant was liable to the plaintiff, and that if a note in an insolvency matter, even if originally included in the assets covered by the assignment, was proved by the defendant as his own property and in his own name, he was liable to the plaintiff for all services done and expenditures made relating to the note, were rightly refused.

In an action for services performed as an attorney at law for the defendant, a request for a ruling that "if the jury shall find that the services" in a certain suit "were rendered in whole or in part for the real benefit of others in connection

with the defendant, yet if he promised to pay the plaintiff for them he must be charged for what they were reasonably worth," is rightly refused, there being no contention by the defendant that he was not liable for services rendered in connection with the action, if they were in whole or in part for the benefit of others.

If an assignment in trust by A. to B. for the benefit of A.'s creditors was substantially terminated at a certain date, in an action by B. against A. for services rendered as an attorney at law, a request for a ruling that "the termination of a trust created by writing need not be in writing. It may be determined by agreement or consent, or by the acts of the parties in interest," becomes immaterial and is properly refused.

In an action by B. against A. for services rendered as an attorney at law, a request that "if the jury shall find that the sums mentioned in the defendant's declaration in set-off, or any of them, were received by the plaintiff as a part of A.'s assets, passing by virtue of the assignment [of A.'s property to B. and F. for the benefit of creditors], they were received by the plaintiff, together with F.; that they are not a proper subject of set-off in this action, and the verdict of the jury as to such items, or any of them so received, must be for the plaintiff," is rightly refused, and the case having been left to the jury becomes immaterial, B. being severally and personally liable, and not jointly with F., for the money which he had himself received and with which he had credited A.

Counsel cannot argue upon his brief the question of the competency of an auditor's report, if the exceptions do not show that any objection was made to its admission or exception taken.

In an action for services performed as an attorney at law for the defendant, the plaintiff cannot object to the admission of testimony relating to foreclosure proceedings and to the deed under the power contained in the mortgage, he having already testified to the foreclosure proceedings, and his services in regard to them being the subject of one or more of the items in his account.

In the case of interrogatories propounded to a physician as to P.'s mental condition, his ability to manage his affairs, and whether F., who was in close personal relations with P., made any statement to the deponent as to P.'s "mental competence to manage his own affairs, and if so, what?" answers to the effect that P. was weak and depressed and appeared to be under the influence of F.; that he was unfit to manage a business of any kind, and that F. said that P. was not competent to manage his business, and that, as he had a good deal of money, he (F.) felt that he wanted to help him along, and so took him under his protection, are clearly competent, the answer as to the statement of F. being admitted in contradiction of F., who had previously been asked upon cross-examination as to P.'s mental condition.

CONTRACT, to recover a balance of $2,681.21 for services rendered as an attorney, and cash paid by the plaintiff for the defendant. The answer set up, among other things, that the employment of the plaintiff was for the limited purposes of getting the defendant a discharge from his debts, and of litigation with the defendant's wife; that the defendant was mentally unsound, and incapable of making a contract; and that the plaintiff and one John A. Fowle had conspired together to

defraud him of his property. The defendant also filed a declaration in set-off.

At the trial in the Superior Court, before *Blodgett*, J., it appeared that from April, 1889, to December, 1892, the plaintiff was attorney for the defendant, and was, with Fowle, from April 20, 1889, to January 2, 1890, trustee for the defendant under an assignment for the benefit of the defendant's creditors. Certain moneys received by the plaintiff from the defendant personally, and in the settlement of his business, were credited.

There was evidence that the plaintiff did in fact render legal services for the defendant relating to matters growing out of the settlement of his business; that he acted for the defendant in several suits arising from complications with his wife, with reference to his real estate, but otherwise did nothing in the active settlement of his business affairs; but Fowle, the co-trustee under the assignment of April 20, 1889, testified that the plaintiff knew and concurred in all that was done, being in constant communication with him, and the defendant testified similarly; that from said April 20, 1889, to January 2, 1890, funds realized from the sale and collections of the defendant's assets were in bank in the joint names of the plaintiff and Fowle, as trustees, and the plaintiff jointly, and with Fowle as co-trustee, signed checks against this deposit; and that this was his performance relating to the settlement of the business affairs of the defendant. There was evidence that on said January 2, 1890, all of the assets of the defendant had been realized upon except two or three claims against third persons, all of his creditors had been paid, and that the trust was then closed, but the defendant testified that he had never been informed of any termination of it.

No charge was ever made by the plaintiff againt the defendant for services as his trustee, except that contained in the following, which is item 239 in the plaintiff's account: " July 28, 1892. Consultation · and advice, correspondence and services in various other matters, including my services as your trustee in assignment for the benefit of your creditors, not heretofore charged, $100." Among the assets of the defendant's estate, and included in the assignment, was a claim against one Barrett and Company, who had gone into insolvency, and had offered

in composition to pay ten cents on each dollar of their indebtedness. The defendant's claim against Barrett consisted of promissory notes made by Barrett, and indorsed and paid by the defendant. One of these notes the defendant proved against Barrett's estate in insolvency in his own name, and there was evidence tending to prove that the defendant was frequently in attendance upon the insolvency court when the Barrett case was before it. One of the notes was proved in the name of the plaintiff. Upon this offer of composition a discharge was granted to Barrett and Company on July 24, 1890, and on November 17, 1890, the plaintiff appealed therefrom to the Supreme Judicial Court. This court dismissed the appeal. *Cooke* v. *Barrett*, 155 Mass. 413. Among the assets of the defendant was a chose in action against one Matthew Robson, who in the lifetime of the defendant's father had been engaged with him and the defendant in tanning hides and leather. The elder Plaisted, in the name of his son and himself as copartners, had filed a bill in equity against Robson for an accounting; the matter had been referred to a master. At the defendant's request the plaintiff, in July, 1899, entered his appearance in the suit. After doing so, there was evidence that he performed the services charged in his account, and also tending to show that the defendant had knowledge of all that the plaintiff did, approved it, and promised to pay for it. The defendant produced evidence tending to show that the plaintiff had agreed to conduct this litigation to its end, and rely upon the proceeds, if any, for his pay and the expenses. This the plaintiff denied. The bill was dismissed.

There was evidence that the mother of the defendant, as executrix of her husband's will, was interested in the outcome of this suit, and that other persons who had received an assignment of one half part of the claim alleged to be due from Robson were likewise interested, and that a verdict against Robson would inure to their benefit.

Before the date of his assignment to the plaintiff and Fowle, the defendant had owned a house, numbered 1 Taylor Street, in Boston. Through one Kingsbury he had conveyed this property by deed or deeds, which had never been recorded, to his wife. Subsequently, and prior to the assignment to the plaintiff and Fowle, the defendant had obtained possession thereof, and it

had been destroyed. One of the results of the litigation with the wife, conducted by the plaintiff for the defendant, was that she, in January, 1890, relinquished all rights in this property to the plaintiff and Fowle, as trustees. The property was subject to a mortgage to one Heald. This mortgage was assigned to one White, who, on September 2, 1892, by advice of the plaintiff, foreclosed, and the property was conveyed to Fowle. The plaintiff testified that this transaction was for the purpose of relieving the property of an incumbrance held by the city of Boston. The defendant testified that he did not understand the purpose and effect of it. The defendant offered to prove foreclosure proceedings and the deed under power contained in the mortgage, services for these proceedings having been charged in the plaintiff's account annexed. The plaintiff objected. The judge admitted the evidence, and the plaintiff excepted.

The defendant introduced, as tending to show his mental condition, the deposition of one Cutter, a physician, to whom he was taken by Fowle, on April 3, 1889, for examination of his physical condition. Cutter deposed that he had made an examination of the defendant; that he had had a large and varied experience in mental diseases and conditions extending over thirty-five years; that he had been a qualified examiner of New York for two years, and during his experience he had probably examined upwards of a hundred persons, not including hospital cases. The plaintiff objected to the introduction of the deposition, and particularly to the answers to interrogatories six, eight, and nine. The deposition was admitted, and the plaintiff excepted.

Interrogatories six and eight, and the answers thereto, are as follows: "*Q.* 6. Did you examine Mr. Plaisted, when you first saw him, with reference to his mental condition, and if so, what did you find it to be? *A.* I did, quite thoroughly, though his mental weakness was very apparent. He was brought to me by Mr. Fowle, as I have said, as one would bring a child, and appeared to be under the influence of Mr. Fowle as a child might be. This weakness was very clear. He was very much depressed. He had no confidence in himself whatever, but wanted to rely upon others and to confide in others. This inclination was very manifest, both from his action and his talk.

He was fickle, and seeking guidance and influence, and with a strong inclination to lean on some one. He talked much of his family wrongs, and wanted to confide in some one as to them, and to be helped out of them. In every way, in his personal appearance, his face, in his actions and in his words, this mental weakness, lack of independence, and inclination to confide in and lean on others was unmistakable. — Q. 8. What would you say as to Mr. Plaisted's ability to manage business affairs, as we generally understand business, either for himself or others, — to carry on a trade, or to buy and sell real estate, for instance, — and if you consider his business ability good or bad, why so? A. I should say he was at that time utterly unfit to manage a regular business of any kind, if I understand your question as involving reasonably large affairs and personal responsibility. I would not consider a child competent to carry on business, or to buy and sell land; and I have said Mr. Plaisted was, mentally, like a child. He was weak-minded, vacillating, had no sound, permanent judgment. He wanted protection and guidance, and to have the opinion of some one else, and to have some one else to lean on. When a person is brought to me by some one else, as Mr. Plaisted was, I judge he is incompetent to manage his own affairs, and if his own, surely others'. His mental weakness was such as to make him unreliable and of poor judgment."

In interrogatory nine the witness was asked : " Did Mr. Fowle make any statement to you as to Mr. Plaisted's mental competence to manage his own affairs, and if so, what? " To this question the plaintiff objected. The objection was overruled, the judge stating that the question was admissible for the purpose of contradicting Fowle, who had previously been asked, upon cross-examination, as to the mental condition of the defendant. To this admission the plaintiff excepted. The witness answered: " Mr. Fowle said he was not competent to manage his own business, and that, as he had a good deal of money, he felt that he wanted to help him along, and so took him under his own protection."

The plaintiff asked the judge to instruct the jury: 1. If the jury find that the plaintiff accepted the trust created by the assignment of April 20, 1889, and acted under it, that accept-

ance and action does not preclude him from acting as attorney for the defendant in matters pertaining to the assignment, and receiving from the defendant, personally, reasonable compensation therefor. 2. Notwithstanding the assignment to the plaintiff and John A. Fowle, the defendant still had a right to a voice in the management of his affairs, the collection of his assets, and the settlement of his debts. If in such management he acted independently of his assignees, and caused action to be taken by the plaintiff as an attorney, the plaintiff may recover from him the sums of money paid out by him in pursuance of such action, and a reasonable compensation for his services therein. 3. Notwithstanding the recital in the deed of April 20, 1889, that the expenses of the settlement of the defendant's business should be deducted from the assets collected, this plaintiff may have his election, either to recover from the assignees the value of his services rendered in such settlement, or he may recover from the defendant such sums as his services are worth. 4. If the possession of the property covered by the deed of April 20, 1889, was retained by the defendant, sold by him, and the proceeds diverted by him to his own or another's use, he is personally liable to this plaintiff for services rendered and expenditures made by the plaintiff at the request of the defendant in reference thereto, notwithstanding that this deed provides that payment of the expenses and charges shall be made out of the proceeds of the trust property. 5. If the defendant, after executing the trust deed, kept possession and disposed of the property covered by the assignment of April 20, spending and investing the proceeds for his own use and benefit, he cannot avoid the plaintiff's claim for services and expenditures rendered and paid at the defendant's request, although the terms of that conveyance may have otherwise provided. 6. If the jury shall find that the sums mentioned in the defendant's declaration in set-off, or any of them, were received by the plaintiff as a part of the defendant's assets, passing by virtue of the assignment of April 20, 1889, I rule, as a matter of law, that they were received by the plaintiff, together with John A. Fowle; that they are not a proper subject of set-off in this action, and the verdict of the jury as to such items, or any of them so received, must be for the plaintiff. 7. The termination of a trust created by

writing need not be in writing.   It may be determined by agreement or consent, or by the acts of the parties in interest. 8.  If the jury shall find that the trust relations created by the deed of April 20, 1889, terminated between the plaintiff and defendant by consent, or otherwise, on or about January 2, 1890, or at any time, and the defendant thereafter requested the plaintiff to render service or expend money, the defendant is liable to the plaintiff, notwithstanding such services and expenditures related to property claims or assets covered by the assignment.   9.  If the jury shall find that one of the notes in the Barrett insolvency matter was proved by the defendant as his own property and in his own name, he thereby became personally interested in the result of the insolvency litigation, and is liable to the plaintiff for all services done and expenditures made by the plaintiff relating to this note.   The verdict of the jury upon such services and expenditures on said note so found to have been proved must be for the plaintiff, even if this note was originally included in the assets covered by the assignment of April 20.   11.  If the jury shall find that the services for the Robson suit were rendered in whole or in part for the real benefit of others in connection with the defendant, yet if he promised to pay the plaintiff for them he must be charged for what they were reasonably worth.   13.  The rule to the auditor required him, among other things, to " state the account between the parties."  As his report is not in compliance with this order, it is not *prima facie* evidence of the right of recovery in the party in whose favor it is made.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*H. H. Pratt & E. W. Mitchell*, for the plaintiff.

*W. P. Hale*, for the defendant.

MORTON, J.   The plaintiff seeks to recover for services performed and disbursements made for the defendant as an attorney at law.   The services began in connection with an assignment made by the defendant for the benefit of his creditors, in which the plaintiff was one of the assignees or trustees.   The account, which is a long one, includes, however, only one item in which a charge is made for services as assignee or trustee, and that embraces also services rendered as an attor-

ney.   It fairly may be said, therefore, that the action relates to
the plaintiff's services and disbursements as an attorney at law
for the defendant.   The answer sets up various matters in
defence, and there is also a declaration in set-off.   The jury
returned a verdict for the defendant on the declaration in set-
off.   At the trial the plaintiff excepted to the admission of cer-
tain testimony and the refusal of the presiding judge to give
certain rulings requested, — fifteen in all.   Of these, one, the
fourteenth, was waived at the trial, and the tenth, twelfth, and
fifteenth have not been pressed, and we therefore treat them
also as waived.   The case is here on the plaintiff's exceptions.
Not all of the evidence is reported, nor all that is material to
the questions raised.

The account, as already observed, is a long one, and the items
relate to many different matters.   It is manifest that the presid-
ing judge could not be required to instruct the jury in regard to
each item in the account, nor in regard to all of the various
aspects in which it was possible that the jury might view the
different items.   What he was required to do was to state for
the guidance of the jury the rules of law in regard to the right
of an attorney to recover for services and in regard to the
defendant's liability therefor, and what it was necessary for
the plaintiff to show in order to maintain his action, accom-
panied by such explanations and references to the nature of
the services rendered and the relations of the parties and the
matters set up in defence, including the declaration in set-off, as
would enable the jury to understand and apply to the case
before them the rules thus laid down.   And this, it seems to us,
is what the presiding judge did.   Having thus instructed the
jury he could not be required, we think, to instruct them par-
ticularly as to the various supposable aspects in which the plain-
tiff might have acted as attorney for the defendant in connection
with matters relating to the assignment and the trust created
thereby, and to his right to recover reasonable compensation for
services so performed.   What has been said above applies to the
first five requests.   See *Hicks* v. *New York, New Haven, & Hart-
ford Railroad,* 164 Mass. 424; *Moseley* v. *Washburn,* 167 Mass.
345.   We think also that the eighth and ninth requests were
properly refused.   The fair import of the charge was, and we

think that the jury must have so understood it, that if the plaintiff was employed as attorney by the defendant, and performed services for him in that capacity in relation to any matters, he was entitled, in the absence of any special agreement, to a reasonable compensation therefor, taking into account the nature and importance of the services rendered. There was no contention on the part of the defendant, so far as the pleadings and exceptions show, that to the extent to which the plaintiff's services and expenditures as attorney related to property covered by the assignment he was obliged to resort to such property for payment. We think also that the eleventh request was properly refused. There was no claim on behalf of the defendant that he was not liable for services rendered in connection with the Robson suit, if they were in whole or in part for the benefit of others. It would seem, though we have not all of the evidence before us, that there was no real dispute; that the trust was substantially terminated in January, 1890, though the defendant testified that he had never been informed of any termination of it. How a trust could be terminated, which was the subject of the seventh instruction requested, was therefore immaterial, and that request was properly refused. The sixth request, in relation to set-off, was also properly refused. For the money which he had himself received and with which he had credited the defendant the plaintiff was severally and personally liable and not jointly with Fowle, and as the case was left to the jury by the presiding justice the instruction requested became immaterial.

The plaintiff has argued upon his brief the question of the competency of the auditor's report. But the exceptions do not show that any objection was made to its admission, or exception taken.

We see no valid objection to the admission of testimony relating to the foreclosure proceedings and to the deed under the power contained in the mortgage. The plaintiff had already testified to the foreclosure proceedings, and his services in regard to them were the subject of one or more of the items in his account.

The deposition of Dr. Cutter was clearly competent. The answer in regard to what Fowle said was admitted as tending to contradict Fowle, and was admissible for that purpose. No

specific objection seems to have been taken to any other questions or answers.

The objections to the testimony of Dr. Burt are not argued on the plaintiff's brief, and we treat them as waived.

*Exceptions overruled.*