## MARCUS M. RUSSEL *v.* GEORGE A. WARD.

Middlesex, December, 1908.

*Condition — Personal to Grantor — Restraint on Aliena-*
*tion — Partial Restraint.*

This is a petition for registration of title to a tract of land on Ward Street in the city of Newton. In 1849 there was granted to the Newton Aqueduct Co. certain reservoir and aqueduct rights in relation to a well on this lot of land, which were subsequently acquired by the city of Boston. In 1864 John Ward, the then owner of the lot, conveyed an undivided three-fourths interest in it to George K. Ward, Mary A. Paul and Emily W. Hyde. In 1867 all of the grantors conveyed the lot to one Wiggin, under whom the petitioner takes title, by a deed containing at the end of the description in the granting clause, the following provision: " The premises are sold with the following restriction, that the city of Boston have the right to a well located on said premises, and this conveyance is made subject to all such rights and the condition that said premises shall never be let or sold to any foreigner or any other than a native born American." John Ward and Emily W. Hyde, the heirs of Mary A. Paul, and four of the five heirs of George K. Ward have released to the petitioner any right, title or interest which they may have in and to the tract in question by virtue of the provision above quoted. The respondent, who is the sole remaining heir of the said George K. Ward, declines to execute such release and claims that said condition is still in full force, and applicable to the parcel of land which is the subject of this inquiry. The rights of the city of Boston therein have

long since terminated.   The grantors in said Wiggin deed
did not at the time that deed was executed own any land
adjoining the lot in question, nor did said provision in regard
to letting or selling the property form a part of any general
scheme of improvement affecting this or other land in the
neighborhood.   The petitioner asserts that said provision is
invalid as an attempted restraint against alienation.

The foundation of the rule against restraint on alienation
lies purely in public policy.   Gray, Restraints on Alienation,
sec. 21;  Hawley v. Northampton, 8 Mass. 3, 37;  Gray v.
Blanchard, 8 Pick. 283;  Winsor v. Mills, 157 Mass. 362.
In all cases in which the law interferes with private contracts
or with private rights for the benefit of the community at
large, whether under police power, the right of eminent
domain, a statute of limitations, or however otherwise, the
rule to be observed in regard to the allowance of such inter-
ference is necessarily one rather of degree than of any fixed
standard.   Such interference is to be jealously watched, and
that is not to be allowed to public policy which is not neces-
sary to the public interest, but nevertheless, all lands are
necessarily held subject to such regulation as may be neces-
sary to the welfare and government of the community at
large.   One of the most essential rules under our law under
which private property may be held is that it shall not be
so held as to prevent its being freely alienable.   This rule
is sometimes ascribed to the statute of quia emptores, but
it clearly rests on the much broader foundation of general
public policy.   It is the same public policy which underlies
the rule against perpetuities, and the rule for which Professor
Gray contends so vigorously, although not in this Common-
wealth successfully, against spendthrift trusts.   The rule
against restraint of alienation is analogous to, although
almost the direct opposite of, the similar rules of public
policy which impress on real estate for the benefit of the
community certain limitations of ownership like dower and

homestead, which cannot be alienated except under certain prescribed forms and conditions, regardless of the wishes of the persons immediately concerned, or of instruments drawn by them by which, but for the matter of public policy, the makers would unquestionably be estopped. The rule is clearly one against restraints on general alienation; against withdrawing real estate from commerce. The application of it must, therefore, of necessity vary with the facts in each case. Reported decisions on the matter are surprisingly few.

A qualification as to alienation to certain particular persons is clearly good. Co. Lit. 223 b; Gray v. Blanchard, 8 Pick. 283; Winsor v. Mills, 157 Mass. 362. As to a restraint against all the world except certain particular persons, however, the decisions both in England and in this country are conflicting and at variance. The cases may be found collected in Mr. Gray's Restraints on Alienation, sec. 33 to 40; and see in particular Doe d. Gill v. Pearson, 6 East 173; Attwater v. Attwater, 18 Beav. 330; In re Macleay, L. R. 20 Eq. 186; Rosher v. Rosher, L. R. 26 Ch. Div. 801.

The rule in regard to the matter deduced by Sir George Jessel in the Macleay case is, whether the condition takes away substantially the whole power of alienation. Pearson, J., commenting in Rosher v. Rosher on the decision in In re Macleay thinks that by " substantially " Jessel really meant " absolutely," and that the rule against restraints on alienation so interpreted is too narrow. He says that the Master of the Rolls seems to have simply followed what he conceived to be the old rule, but that with all respect to Sir George Jessel, to the weight of whose opinion he gives the greatest deference, he himself is unable to find in Littleton what Jessel found there. He thinks that Jessel interpreted the rule as laid down by Littleton to be " does it take away all power of alienation," and that therefore Jessel held as to the restraint in In re Macleay that " being a limited restraint on alienation, the condition is good." For " substan-

tially " Pearson would read " practically." Prof. Gray thinks that a better rule than either would be, that a condition is bad if the alienation be restricted to a particular individual or a particular class; and in all of the reported cases except Gandolfo v. Hartman (*infra*) in which the restraint has been held bad, it is to be noticed that it was an attempt to restrain all except members of the grantor's or settlor's family. The " classes " considered in Mr. Gray's book are all of them classes of heirs. In the case at bar the classes considered are classes of citizens. The only case at all analogous to the one at bar that I can find is the case of Gandolfo v. Hartman, 49 Fed. Rep. 181, in the U. S. Circuit Court for the Southern District of California. That was a case of a covenant in a deed not to convey or lease the land to a Chinaman. The covenant was held void as contrary to public policy, in contravention of our foreign treaties, and in violation of the 14th amendment. For a severe editorial criticism of the decision in Gandolfo v. Hartman see 26 Am. Law Rev. 598.

When this case was first before me I expressed an opinion that while in terms a restraint against all the world except a particular class, yet in effect, because the particular class forms but a comparatively small part of the community, the restraint is really one which permits of general alienation except to the very small class of citizens who are not " native born Americans." On a careful reconsideration of the whole matter, however, I am satisfied that this is not so. Aside from the " foreigners " who in themselves constitute the largest portion of all the world, the class of American citizens who are not native born is, and was at the time this deed was executed, a very large one. The restraint would in certain sections of the country, and in certain portions of Massachusetts, notably in Boston, render the land inalienable in the general market and except to a restricted class. In certain parts of many of our cities it would render the

land " practically " inalienable altogether. On the whole, the condition seems to me to be void as a restraint against alienation.

I also think, however, that the clause in question is properly to be construed not as a common law condition but as a personal stipulation for the benefit of, and intended to be enforced only by, the original grantors. They had no land to which it was or could be made appurtenant. It is true that they used the word " restriction " in that part of the clause relating to the well right, and " condition " in that relating to the restraint on alienation, but the word " restriction " is used inartificially and incorrectly, and there is nothing to indicate that the word " condition " is intended to be used in its strict and technical meaning. The case seems to me to be within the class of cases represented by Badger v. Boardman, 16 Gray 559; Jewell v. Lee, 14 Allen 145; Dana v. Wentworth, 111 Mass. 291. And see Clapp v. Wilder, 176 Mass. 332.

Decree for petitioner.