JOHN P. MULDOON vs. WEST END CHEVROLET, INC.
(and a companion case.[1])

Middlesex.   October 9, 1958. — November 12, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Time. Saturday. Practice, Civil,* Exceptions: saving of exception.
*Attorney at Law. Evidence,* Admitted de bene, Relevancy and ma-
teriality.

Because of the amendments of G. L. c. 213, § 4, and c. 220, § 6, by
St. 1947, c. 449, §§ 5, 6, Saturday is excluded in computing the three
days, after receipt from the clerk of the Superior Court of notice of a
ruling made by a judge in the absence of counsel, within which, by the
provisions of Rule 72 of the Superior Court (1954), an exception to the
ruling may be taken. [94–95]
A fee arrangement between an attorney and his client whereby the at-
torney, for services to be rendered before the Internal Revenue Service
respecting substantial proposed increases in the client's income taxes,
was to be paid "a retainer fee plus additional compensation . . . in
an amount that would constitute fair, adequate and just compensation
for the services rendered" was not an arrangement for a wholly or
partially contingent fee within a Treasury Department regulation re-
quiring an attorney entering into a fee arrangement "on a wholly or
partially contingent basis" to file a signed statement to that effect
with the department, even though the fact and degree of the attorney's
success in dealing with such tax matters were to be taken into consid-
eration with other factors in determining the value of his services.
[95–97]
In an action by an experienced tax attorney for legal services rendered
in connection with controversial and substantial income tax increases
proposed against the defendant by the Internal Revenue Service,
which action, after the tax controversy had concluded with large tax
savings to the defendant, was commenced by a writ stating an ad
damnum greatly in excess of the amount of the fee eventually allowed
by the trial judge, the record disclosed no basis for a holding that a
"manifestly unreasonable" fee was asked by the plaintiff in violation
of a regulation of the Treasury Department. [97]
At the trial of an action by an attorney at law for services rendered in
connection with the Federal income tax liability of the defendant,

---

[1] John P. Muldoon vs. William H. Mitchell, Junior, & another.

there was no error in the admission in evidence de bene of letters from the Internal Revenue Service as to which there was no subsequent motion to strike and which indicated the nature and size of the controversy in which the plaintiff represented the defendant. [98]

Two ACTIONS OF CONTRACT. Writs in the Superior Court each with an ad damnum of $20,000 and dated August 6, 1956.

The action was heard by *Paquet*, J.

*Victor C. Harnish*, for the defendants.

*Harold R. Donaghue*, (*Gerald F. Muldoon with him*,) for the plaintiff.

CUTTER, J. These are two actions by an attorney to recover "fair and adequate compensation" for legal services "and for the results achieved" in connection with Federal income tax adjustments for the years 1951, 1952, and 1953 proposed against each of the defendants. The tax adjustments (which involved matters shown by the exhibits to be of a type likely to raise controversial issues of law and fact) in the aggregate would have increased the defendants' taxes by $105,000. The aggregate tax liability of the defendants following the plaintiff's representation of them before the Internal Revenue Service was about $15,000. The cases were tried together before a judge of the Superior Court who found that the plaintiff made a contract to represent the defendants before the Internal Revenue Service and that the defendants "agreed to pay a retainer fee plus additional compensation for the plaintiff's services in an amount that would constitute fair, adequate and just compensation for the services rendered." It was undisputed that $2,500 had been paid by the corporate defendant to the plaintiff in January, 1955, but the evidence whether this was a retainer fee or a flat fee was conflicting. The trial judge found that the plaintiff was entitled to recover, in the aggregate, $7,069.05.

The defendants in their answers, and by requests for rulings, presented the contention that the fee arrangement was a wholly or partially contingent fee agreement, unlawful in that no statement of such an agreement was filed with the

Committee on Practice of the Treasury Department as required by 31 C. F. R. Sub-tit. A, Part 10, § 10.2 (hereinafter referred to as Circular No. 230, by which name the regulation is sometimes known).[2]

Circular No. 230 provides in part, "(y) Fees; agreements. (1) No enrolled person [i. e. enrolled to practice before the department] shall exact from his client a manifestly unreasonable fee, whether contingent or otherwise, in any matter before the Treasury Department. The reasonableness of a fee in any case is within limits a matter of judgment and depends upon all the facts and circumstances thereof, including the complexity and difficulty of the case, the amount of time and labor required for its proper preparation and presentation, the amount involved, and the professional standing and experience of the attorney or agent." Circular No. 230 further provides that whenever "an enrolled attorney or agent shall enter into a contract to represent a client before the Treasury Department on a wholly or partially contingent basis, he shall file with the Committee a signed statement to that effect, containing the terms of the contract as they relate to compensation." The plaintiff filed with the department a statement that the fee basis was neither contingent nor partly contingent. The trial judge expressly found that the plaintiff's contract with the defendants was not a contingent contract within the meaning of Circular No. 230.

The bill of exceptions presents the defendants' exceptions (a) to the admission in evidence of the Internal Revenue Service letters proposing adjustments in the defendants' income tax liability; (b) to the denial of certain requests for rulings; and (c) to the denial of the defendants' motions for a new trial.

1. The principal exceptions argued by the defendants are to the denial of requested rulings. The defendants received notice of the court's findings and rulings on Friday, March 8,

[2] 5 U. S. C. (1952) § 261 provides in part that the "Secretary of the Treasury may prescribe rules and regulations governing the recognition of . . . attorneys . . . representing claimants before his department" and requiring proof of their qualifications.

1957. On Wednesday, March 13, 1957, the defendants filed exceptions to the findings and rulings. The plaintiff contends that these exceptions were not seasonably filed under Rule 72 of the Superior Court (1954) which requires, in part, that exceptions to any "ruling . . . made in the absence of counsel shall be taken by a writing filed with the clerk within three days after the receipt from the clerk of notice thereof."

In computing the time allowed to the defendants by Rule 72 for filing exceptions, any Sundays or legal holidays must be excluded, because the period is less than seven days. *Stevenson* v. *Donnelly*, 221 Mass. 161, 163. *Marcellino, petitioner*, 271 Mass. 323, 324–325. *Daley* v. *District Court of Western Hampden*, 304 Mass. 86, 94. Cf. *Iannelle* v. *Fire Commr. of Boston*, 331 Mass. 250, 252. The question arises whether Saturday also must be excluded, by virtue of the amendments of G. L. c. 213, § 4, and c. 220, § 6, by St. 1947, c. 449, §§ 5, 6,[3] materially restricting the transaction of court business on Saturdays, except in the District Courts.

This question has not hitherto been presented for decision by this court. We think that the reasoning of Rugg, C. J.

---

[3] General Laws c. 213, § 4, as amended in 1947, reads: "The courts shall always be open in every county and the business thereof . . . may be transacted at any time; but such business shall not, except as provided in section six of chapter two hundred and twenty, be transacted on *Saturday or* Sunday or on a legal holiday unless it relates to an application which, in the opinion of the justice to whom it is made, is of pressing necessity; *provided, that, if the convenience of the public so requires, either court shall be open for the transaction of business on such Saturdays, not legal holidays, and during such hours thereof, as the chief justice thereof may determine.*"

General Laws c. 220, § 6, as amended in 1947, reads: "Courts shall not be open on Sunday or a legal holiday, *and courts, other than district courts, shall not be open on Saturday,* except as *otherwise provided by law* or except for the purpose of instructing or discharging a jury, receiving a verdict or adjourning; but this section shall not prevent the exercise of the jurisdiction of any magistrate in criminal cases to preserve the peace or arrest offenders. *The provisions of section nine of chapter four shall apply in the case of the closing of a court on any Saturday to the same extent as if such Saturday were a legal holiday.*"

New words inserted in the sections just quoted by St. 1947, c. 449, §§ 5, 6, are shown in italics. Some language, not here relevant, was omitted by the 1947 amendments from the earlier provisions of c. 220, § 6.

General Laws c. 4, § 9, reads: "Except as otherwise provided, when the day or the last day for the performance of any act, including the making of any payment or tender of payment, authorized or required by statute or by contract, falls on Sunday or a legal holiday, the act may, unless it is specifically authorized or required to be performed on Sunday or on a legal holiday, be performed on the next succeeding business day."

See also Rule 2 of the Superior Court (1954).

in *Marcellino, petitioner,* 271 Mass. 323, 324–325, requires us to hold that, by the 1947 amendments just mentioned, the Legislature has indicated a purpose that, although Saturdays, as such, have not been made legal holidays under G. L. c. 4, § 7, Eighteenth, as amended, Saturdays shall be put on the same basis as Sundays and legal holidays for the purposes of the general rule governing the computation, in matters of the type now before us, of periods of less than seven days prescribed for the performance of an act in connection with the courts other than the District Courts. In the *Marcellino* case, this court (at p. 324) read G. L. c. 213, § 4, as it then stood (see footnote 3, *supra*), in connection with G. L. c. 4, § 9. It concluded that the "implication of these statutes is that, so far as performance of business connected with the courts is concerned, legal holidays stand on the same footing as does the Lord's day," and that legal holidays, as well as Sundays, were to be excluded in computing a prescribed period of less than seven days for filing exceptions in a criminal case. Since the 1947 amendments, the same implication, relied on by the court in the *Marcellino* case, logically applies to Saturdays in view of the changes in G. L. c. 213, § 4, effected by the amendments.

Applying this principle, in the present cases, Saturday, March 9 (the first day after notice of the rulings was received), and Sunday, March 10, 1957, must be excluded from the computation. Filing at any time during the three succeeding days would have been seasonable. Because the defendants' exceptions to the denial of requests for rulings were filed on Wednesday, March 13, they were filed on time.

2. The defendants' requests for rulings which were denied need not be set out at length. The principal purpose of these requests was in effect to obtain a ruling that the plaintiff's fee arrangement with the defendants was illegal and unenforceable because in violation of Circular No. 230. No such ruling could properly be made in view of the trial judge's explicit finding that the arrangement was to pay "fair, adequate and just compensation for the services rendered."

Such an arrangement is a usual and proper arrangement between lawyer and client and means that the lawyer's services, if they have any value at all, are to be paid for in some amount in any event and that their fair value is to be computed, after the services have been rendered, by an appraisal of the services in the light of all relevant circumstances. *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569. See *Cooke* v. *Plaisted*, 176 Mass. 374, 382–383; *Abrams* v. *Loew*, 335 Mass. 96, 98–100. See also *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329, 335–336. Certainly, under the cases just cited, the importance, size, and difficulty of the matters involved, and the attorney's success in dealing with them, are among the relevant considerations. See Am. Bar Assn. Canons of Professional Ethics, Canon 12 (4), which includes, as factors of significance, "the amount involved in the controversy and the benefits resulting to the client from the services." See also Wood, Fee Contracts of Lawyers, §§ 27–35.

Such an arrangement is not in any usual sense (see Wood, Fee Contracts of Lawyers, §§ 15–17) a contingent or partially contingent fee contract or champertous arrangement. Here compensation was not to be based upon any percentage of the tax saving effected, nor (upon the agreement found by the trial judge) was the payment to be in any degree contingent upon success. A debt was to be due from the client to the attorney for the fair value of the services in any event, and there is no indication that the plaintiff had, or was to have, any property interest in any sum saved or recovered or that he was to bear his own expenses, if unsuccessful. There were present none of the elements of contingency or impropriety discussed in *Holdsworth* v. *Healey*, |249 Mass. 436, 439, *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304, 313, or *Baskin* v. *Pass*, 302 Mass. 338, 341–342. Cf. also *Blaisdell* v. *Ahern*, 144 Mass. 393, 395–396; *Manning* v. *Sprague*, 148 Mass. 18, 22; Williston, Contracts (Rev. ed.) §§ 1712, 1729, 1729A.

It would be naive to deny that the fact and degree of

success are important factors in determining the value of legal services to a client. Under the fee arrangement here involved, these factors were to be taken into account only to the extent that they bore upon the value of the services, and then only as two of numerous factors appropriately to be considered. That these factors were to be considered does not make the fee contingent.

We have been referred to, and have found, no court decision or departmental interpretation of Circular No. 230 expressing any view inconsistent with the views expressed above. We hold that there was, on the facts found by the trial judge, no contingent fee arrangement, about which any report to the Treasury Department of its terms was required by Circular No. 230, and that the report in fact filed with the department by the plaintiff was accurate.

The defendants further contend that there was a violation of Circular No. 230 because they allege that the plaintiff, at the conclusion of the tax controversy, sought unreasonable fees. The bill of exceptions discloses only the fees eventually allowed. There was evidence that the plaintiff talked by telephone with one defendant about the size of his fee at the conclusion of the tax controversy and that the defendants then refused any payment, beyond the original $2,500. It is not a bar to recovery that a substantial ad damnum was stated in the writs. The tax cases involved substantial sums and were successfully handled by a tax lawyer who had held important positions in the Internal Revenue Service, and who consumed substantial time on the defendants' work. So far as this record shows, we cannot hold that excessive fees were asked or allowed in violation of Circular No. 230.

In view of our holding that no violation of Circular No. 230 has been shown, there is no occasion for us to consider whether, if a violation of what is merely a departmental regulation had been shown, it would have been a matter to be left wholly to departmental discipline, or whether it would have been necessary to bar the plaintiff from recov-

ery because his contract might be tainted by illegality. See discussion of somewhat analogous problems in *Noble* v. *Mead-Morrison Mfg. Co.* 237 Mass. 5, 21–26; *Johnston* v. *Senecal,* 329 Mass. 556, 557–559; *Mitchell* v. *Flintkote Co.* 185 F. 2d 1008, 1009–1011 (2d Cir.), cert. den. 341 U. S. 931. See also 64 Harv. L. Rev. 1200; note, 45 Yale L. J. 731.

3. The defendants filed motions for a new trial which were denied. One ground was that the contract which the trial judge found to have been made by the parties was in violation of Circular No. 230. No further discussion of that question is necessary. The defendants also stated as grounds for their motions (a) an alleged comment of the trial judge during argument that a certain answer by the plaintiff to an interrogatory was "unimportant and of no meaning," a comment not set out in the bill of exceptions with full reference to its context, and (b) a comment of the judge to counsel at the bench at the close of the evidence, not amounting to a ruling. The comments are not shown to have been prejudicial, and, in any event, to the extent that the exceptions to these comments are argued at all by the defendants in their brief, they are not argued with sufficient clarity to require us to consider them. See Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

4. There was no error in admitting the Internal Revenue Service letters proposing adjustments in the defendants' tax liability. These exhibits were admitted subject to leave to the defendants to move to strike them later. The defendants made no such motion. *Brek's Case,* 335 Mass. 144, 148–149. Cf. *Donahue* v. *Kenney,* 330 Mass. 9, 11–12. In any event they were relevant and admissible as evidence of the nature and size of the controversy in which the plaintiff represented the defendants.

*Exceptions overruled.*