THE FIRST NATIONAL BANK OF BOSTON, executor, *vs.*
VIRGIL C. BRINK & others.

Suffolk.    November 5, 1976. — March 29, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Practice, Civil,* Appeal. *Attorney at Law,* Compensation. *Evidence,* Burden of going forward, Presumptions and burden of proof. *Corporation,* Merger.

In a suit in equity by the executor of two deceased former stockholders of a corporation challenging as excessive the fee charged by the defendants, partners in a law firm which had represented the corporation in a tax deficiency proceeding under the Internal Revenue Code, error on the part of the judge in ruling that the plaintiff bore the burden of going forward with the evidence and the burden of persuasion did not prejudice the plaintiff where the judge made a negative finding that the fee was not "unfair, unreasonable," with an explanation which was the equivalent of an affirmative finding that the fee was fair and reasonable, apart from the burden of persuasion. [263-265] LIACOS, J., dissenting.

In a suit in equity by the executor of two deceased stockholders of a corporation challenging the $760,000 fee charged by the defendants,

partners in a law firm which had represented the corporation in a tax deficiency proceeding under § 531 of the Internal Revenue Code and had saved more than $4,500,000 from the liability asserted by the I.R.S., where it appeared that the decedents joined with other stockholders in choosing the partners as their agents, authorized the agents to employ counsel, and contemplated that the agents would employ the law firm, and the trial judge "weighed all of the relevant but flexible factors" to be considered "in reviewing a challenged attorney's fee in a voluntary contractual relationship," it was held that the trial judge's ultimate finding that the fee charged was fair and reasonable was not clearly erroneous [266]; the judge's use of the "percentage approach" to the "amount involved and the results obtained," and his failure to adhere to the "time charges" involved, disclosed no error [266-267].

Under an escrow agreement referring to the net "tax saving, if any," and to the "actual" tax saving to result to a corporation from its payment of the counsel fee in a deficiency proceeding against it under the Internal Revenue Code, and where later the corporation merged with a second corporation and both corporations merged into a third corporation which paid the counsel fee and no actual tax saving resulted to the first corporation, its stockholders were not entitled to any relief against the third corporation. [267-268]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on March 21, 1973.

On transfer to the Superior Court, the suit was heard by *Lynch*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Ronald F. Kehoe* (*Ronald R. Cloutier* with him) for the plaintiff.

*Jerome P. Facher* (*John G. Fabiano* with him) for Virgil C. Brink & others.

*Richard Wait* for The Paul Revere Corporation.

BRAUCHER, J. The plaintiff challenges the reasonableness of a legal fee of $760,000 charged by the law firm of Hale and Dorr (the law firm), for representing Thompson Wire Company (Thompson Wire) in a tax deficiency proceeding in the United States Tax Court under § 531 of the Internal Revenue Code, relating to unreasonable accumulations (the tax case). A judge of the Superior Court found that the fee "lies at the outer limit of the range of reason and fairness," and denied relief. We in-

terpret that finding as a finding that the fee was reasonable, and uphold the finding as not clearly erroneous. We also affirm the judge's denial of relief against the defendant The Paul Revere Corporation (Paul Revere).

In March, 1973, the plaintiff, as executor of the wills of Baker and Baster, deceased former stockholders of Thompson Wire, filed a "Petition for Enforcement of Trusts and for Declaratory Relief" in the Supreme Judicial Court for Suffolk County. The principal defendants are the partners of the law firm (including Messrs. Virgil C. Brink and Samuel S. Dennis, Third), Paul Revere, and Morgan Guaranty Trust Company (Morgan). The case was transferred to the Superior Court, where the judge made a number of rulings before trial. The law firm defendants stipulated that any refund of the challenged fees, including the fee in the tax case, would inure to the benefit of all former stockholders of record of Thompson Wire, and the judge thereupon deferred consideration of the "class action" aspect of the case. He also ruled that the relationship of Messrs. Brink and Dennis to the former stockholders of Thompson Wire was an agency and not a trust, and ordered all "trust" allegations struck from the petition. He further ruled that the relationship was a fiduciary relationship, and that the relationship of the law firm defendants to those stockholders was a relationship of attorneys and clients and a fiduciary relationship. He ruled that both the burden of going forward with the evidence at the trial and the burden of persuading the trier of facts were on the plaintiff.

The case was tried without a jury, and the judge made elaborate findings of fact, which we summarize so far as they relate to the fee in the tax case. Thompson Wire was a corporation engaged in the steel business in Worcester. Since the 1920's Mr. Brink had been an officer and director, and the law firm had represented the corporation. On August 19, 1965, the seventeen shareholders, represented by the law firm, sold all 9,000 outstanding shares of common stock to FAR, Inc. (FAR), for about $28,000,000 in cash. The plaintiff's decedents held about eighteen per cent of

the stock; about sixty-one per cent was held by trusts whose trustees were partners in the law firm. It had by then become evident that the Internal Revenue Service (IRS) proposed to assess a tax deficiency under § 531 of the Internal Revenue Code, which imposes a tax in the nature of a penalty for unjustified accumulations of surplus. To provide for that contingency, the parties to the purchase and sale agreement, together with Morgan and Messrs. Brink and Dennis, entered into a separate written escrow agreement providing for the deposit of $7,500,-000 of the purchase price with Morgan.

Under the escrow agreement, drafted by the law firm, the fund in escrow was to be used to finance Thompson Wire's defense of the tax claims and to pay any deficiency tax and interest. The balance was to be distributed to the selling stockholders. Messrs. Brink and Dennis were chosen as sellers' agents, empowered to hire counsel and incur other expenses in the anticipated tax proceedings. In June, 1967, and July, 1968, IRS mailed Thompson Wire deficiency assessments for a total of more than $5,500,000 principal and interest for the taxable years 1958 through 1964. As anticipated by the selling stockholders, Messrs. Brink and Dennis engaged the law firm to continue its representation of Thompson Wire in connection with the tax proceedings. That engagement was a natural development, proper and appropriate in the circumstances.

In discussions between IRS and Thompson Wire, IRS declined to entertain settlement on any other basis than full payment of the tax claimed to be due. That stand appeared to be justified by the strength of IRS's case and the vulnerability of Thompson Wire's position; as to the taxable year 1964 it was very clear that IRS would necessarily prevail on its entire claim of more than $745,000 because for that year Thompson Wire had no available and tenable defense whatever. In this situation, Messrs. Brink and Dennis engaged a partner in the law firm, one of the outstanding trial lawyers in the area, as trial counsel to prepare and try the tax case. Trial counsel made a number of sound long-range strategic decisions resulting in oral

testimony and exhibits which actually demonstrated that Thompson Wire had a shortage of funds available to meet its reasonable business needs and provided a factual basis on which the Tax Court could have made findings for the taxpayer. After the trial of the taxable years 1958-1963 in May, 1969, the Tax Court judge said that it would probably take him nine months to decide the case and that he had found the taxpayer's presentation very persuasive. IRS then began seriously to consider settlement, and about a month later the case was settled for the years 1958-1963 and for 1964 for a little over $1,000,000, including interest. Thompson Wire thus effected a saving of more than $4,500,000 from the liability asserted by IRS.

There was no contingent fee agreement, written or oral; the law firm would have been paid a fair and reasonable fee even if IRS had succeeded establishing a greater amount or all of the claimed deficiencies. A committee of senior partners of the law firm reviewed and discussed the case in detail and arrived at a fee in the area of $750,000. As a check on its judgment the committee then made computations based on various percentages of the tax savings to the client. There was an existing practice of basing legal fees in tax cases on a percentage of savings, with prevailing percentages of about twenty to twenty-five per cent, and this was consistent with fees in other types of complex economic or commercial litigation. The fee ultimately set, $760,000, was approximately seventeen per cent of the total saving, or twenty per cent of the saving on tax and ten per cent of the saving on interest. The tax case was not a routine or customary tax case, and customary practice offered no guide in setting the fee. The result achieved was noteworthy, and produced a direct benefit to the former shareholders, since funds in escrow to pay the tax were returned to them. The highly favorable result was attributable in major part to the skill and competence of counsel. The law firm spent approximately 2,000 hours on the case, representing a prudent and efficient use of time. Using rates of $85 an hour for trial counsel and less for others, the law firm's total "billable time

charges" for the case were approximately $102,000. This is merely a management guide to a minimum charge for routine matters; it is not intended to be anything more and is only one of various factors to be considered.

In May, 1967, both Thompson Wire and FAR were merged into Paul Revere, and the operations of the former Thompson Wire were continued as a division of Paul Revere. The law firm on December 30, 1969, mailed its bill to the division. The bill was paid by the division by check dated May 1, 1970. On the same day the division, as successor to FAR, was fully reimbursed by Morgan from the escrow fund. Several of the former stockholders, including the plaintiff's decedent Baster, knew of the bill before it was paid, and none made any objection. Baster, former president of Thompson Wire and a witness in the tax case, expressed his agreement with the fee on three occasions. In a letter of July 10, 1970, distributing escrow funds, Mr. Brink fully disclosed the fee and its payment to each former stockholder except the plaintiff's decedent Baker, who had died, and none objected. The bill was in fact satisfactory to all the former stockholders who were alive when it was rendered.

After the bill was submitted but before it was paid, counsel for Paul Revere challenged its size. After discussion, the law firm agreed to indemnify Paul Revere for any liability incurred by approving the fee. Thereafter the Thompson Wire division and Paul Revere certified that the bill had been paid and that there were no tax savings resulting from the payment. There was nothing improper or unusual in the indemnity agreement or the discussions between Paul Revere and the law firm. Paul Revere's certification of the bill was based on its good faith belief that the bill was fair and reasonable.

The judge's "ultimate findings" were that none of the challenged bills of the law firm "was unfair, unreasonable or clearly excessive, i.e., substantially in excess of a reasonable fee," that the amount of the bill in the tax case "was undoubtedly substantial and lies at the outer limit of the range of reason and fairness," but that he was "not per-

suaded, and has no firm and definite conviction," that the bill in the tax case "was unreasonable, unfair or clearly excessive in the circumstances."

We summarize the judge's findings of material fact with respect to the claim against Paul Revere, based in part on a statement of agreed facts. Under the escrow agreement Thompson Wire was to pay the counsel fees of the law firm and to notify Morgan of the amount paid and of Thompson Wire's tax savings, "if any," resulting from the payment. Morgan was then to pay FAR the excess of the payment over the tax saving. If Thompson Wire had made separate tax returns from FAR, the fee would have been deductible and there would have been Federal and State tax savings amounting to about sixty per cent of the fee. But by reason of the mergers the Thompson Wire division paid the fee and was promptly reimbursed as the successor to FAR, and there was no expense and hence no actual tax saving. The judge read the escrow agreement as dealing with "actual, not hypothetical, tax saving," and found that the mergers were not the result of any bad faith on the part of Paul Revere and were not effectuated in a deliberate effort to prevent any tax saving.

Judgment was entered against the plaintiff on all its claims. The plaintiff appealed, and we allowed its application for direct appellate review by this court. The appeal relates only to two of the seven claims of the plaintiff disposed of by the judgment.

1. *The standard of review.* The case is governed by the third sentence of Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974): "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." In addition, this court must examine the legal standard applied to the facts found in order to assure that the ultimate findings and conclusions below were consistent with the relevant legal standards. *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976), and cases cited. "It was a question of fact for the judge to decide what was fair and reasonable compensation for the services ren-

dered." *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 568 (1933). Cf. *Perkins* v. *Blake,* 3 Mass. App. Ct. 415, 418 (1975) (upholding jury verdict); *Kittler & Hedelson* v. *Sheehan Properties, Inc.,* 295 Minn. 232, 237 (1973) (same). See Annot., 57 A.L.R.3d 475, 482 (1974).

2. *Burden of proof.*   The judge erred in ruling that the plaintiff bore the burden of going forward with the evidence and the burden of persuasion. In our view the case resembled a claim for an accounting by a fiduciary. "The burden of proof in such a proceeding is on the accountant, after he has admitted the relation and the receipt of a certain sum, to prove that he has disposed properly of the amount for which he is accountable, and to show what that amount is. *Little* v. *Phipps,* 208 Mass. 331 [1911]." *Pappathanos* v. *Coakley,* 263 Mass. 401, 407-408 (1928). See Restatement (Second) of Agency § 399 and comment e (1958).

The plaintiff does not attack the contract for legal services embodied in the escrow agreement. We therefore need not consider whether, as a contract entered into before the relevant attorney-client relationship was established, that contract was "prima facie valid and binding." *McInerney* v. *Massasoit Greyhound Ass'n,* 359 Mass. 339, 352 (1971). Contrast *Frost* v. *Bachman,* 259 App. Div. 745 (N.Y.), aff'd 283 N.Y. 744 (1940). That contract provided for the employment of counsel and for payment of counsel fees, but it did not fix the amount of fees either in dollar amount or by formula. There was no "contingent fee agreement" within S.J.C. Rule 3:14, 351 Mass. 795 (1967). Cf. *Muldoon* v. *West End Chevrolet, Inc.,* 338 Mass. 91, 95-97 (1958). Counsel were therefore entitled to fair and reasonable compensation for the services rendered. *Cummings* v. *National Shawmut Bank,* 284 Mass. at 568-569. If they had sued for a fee, they would of course have borne the burden of proof, and we do not think the burden should be shifted merely because they were paid out of a fund in the control of which they shared.

The plaintiff concedes that the burden of going forward is not in issue on appeal because the case was fully tried

below. We think that the burden of persuasion would be similarly out of the case if the judge had affirmatively found that the fee in issue was fair and reasonable without reference to the burden. As to a number of claims not now in issue, the judge made such affirmative findings. As to the $760,000 fee, however, his ultimate finding was that none of the Hale and Dorr bills in issue "was unfair, unreasonable or clearly excessive, i.e., substantially in excess of a reasonable fee," with an explanation that the amount of that bill "was undoubtedly substantial and lies at the outer limit of the range of reason and fairness." We think the negative finding, with this explanation, is the equivalent of an affirmative finding that the fee was fair and reasonable, apart from the burden of persuasion. We therefore do not consider whether we would be prepared to supply such a finding if it were necessary. In this light the judge's error as to the burden of persuasion, like his error as to the burden of going forward, did not prejudice the plaintiff.

We note that the finding that the fee was not "clearly excessive" is inappropriate and irrelevant. The quoted phrase comes from S.J.C. Rule 3:22, DR 2-106, 359 Mass. 807 (1972), where it relates to disciplinary proceedings. A lawyer is not to be subjected to professional discipline unless the excessiveness is clear, but in the absence of an agreement as to the amount he cannot recover any amount in excess of what is fair and reasonable.

3. *Factors to be considered.* Factors to be considered as guides in determining the reasonableness of a fee are listed in DR 2-106, *supra*, effective October 2, 1972. That list, like the prior list in Canon 12 of the former Canons of Professional Ethics of the American Bar Association, is substantially identical to that contained in *Cummings* v. *National Shawmut Bank,* 284 Mass. at 569. See *McInerney* v. *Massasoit Greyhound Ass'n,* 359 Mass. 339, 354 (1971). The judge therefore properly undertook to consider those factors.

The judge distinguished cases of awards to counsel "in a non-voluntary, forced relationship" where the fees are to

be paid "by a losing party or out of a common fund." As to awards of counsel fees as costs to be paid by opposing parties, we have applied "strictly conservative principles." *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939), quoting from *Commissioner of Banks, petitioner, in re Prudential Trust Co.,* 240 Mass. 478, 485 (1922). Cf. *Madden* v. *Madden,* 363 Mass. 884 (1973); *Hayden* v. *Hayden,* 326 Mass. 587, 596 (1950). We need not now consider the problems of awarding fees out of a common fund, recovered, for example, in a class action. See *Cherner* v. *Transitron Elec. Corp.,* 221 F. Supp. 55, 61 (D. Mass. 1963); cf. *Detroit* v. *Grinnell Corp.,* 495 F.2d 448, 468-474 (2d Cir. 1974). In *Paone* v. *Gerrig,* 362 Mass. 757, 763-764 (1973), we held that counsel retained by the administrator of an estate was entitled to be paid out of the estate in an amount fixed as in a case of contractual relationship. The same principle applies here, where the plaintiff's decedents joined in choosing partners in the law firm as their agents, authorized the agents to employ counsel, and contemplated that they would employ the law firm.

4. *Application of the factors.* The judge considered "the difficult nature of the [tax] case, the calibre of the services rendered, the reputation and skill of the attorneys preparing and trying the case, and the highly beneficial and satisfactory result to the client, as well as the absence of any timely, significant objection by the selling shareholders" to the amount of the fee "and the actual concurrence of many of them therein." He "weighed all of the relevant but flexible factors" to be considered "in reviewing a challenged attorney's fee in a voluntary contractual relationship between the attorney and client, as well as expert opinion as to reasonableness." In the circumstances we are not "left with the definite and firm conviction that a mistake has been committed." See *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976), quoting from *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948). Hence we cannot say that the judge's ultimate finding, as we have interpreted it, is clearly erroneous.

The plaintiff's principal attacks on that finding are

twofold. First, it says, "A percentage approach is improper and invalid." This ignores the judge's clear statement that he took account of all relevant factors; it also neglects the obvious utility of percentage computation in applying one of those factors, "[t]he amount involved and the results obtained." See Annot., 57 A.L.R.3d 475, 514 (1974). The plaintiff argues that the "percentage approach" should be limited to cases where the fee arrangement has been negotiated in advance. But in our law there is not "a complete dichotomy between a fee which is reasonable in the light of hindsight and one which is permissible at the outset." *McInerney* v. *Massasoit Greyhound Ass'n*, 359 Mass. 339, 353 (1971).

Second, the plaintiff says, "Time charges, when they are substantial, should be the starting point and the touchstone for determining a fair and reasonable legal fee." This is directly contrary to *Cummings* v. *National Shawmut Bank*, 284 Mass. 563 (1933). There the lawyer testified that he spent twelve or fifteen hours, and the client contended a reasonable fee was $20 an hour, but the lawyer was awarded more than $5,000, well over $300 an hour. The plaintiff attempts to meet this point by asserting that its rule does not apply when the time charges are "relatively slight." But it does not explain how "relatively" differs from a "percentage approach," or what other considerations make relative size significant. For other cases in which time charges were not important, see *Elbaum* v. *Sullivan*, 344 Mass. 662, 666 (1962); *Brogna* v. *Pioneer Petroleum Co.*, 344 Mass. 382, 386 (1962); *Muldoon* v. *West End Chevrolet, Inc.*, 338 Mass. 91, 96 (1958); *Abrams* v. *Loew*, 335 Mass. 96, 100 (1956). Contrast *Rubin* v. *Taylor*, 1 Mass. App. Ct. 208, 210 (1973), where the parties had agreed that the fee would be based "strictly on a time basis."

5. *The claim against Paul Revere.* The merger of Thompson Wire and FAR into Paul Revere undoubtedly had the effect of eliminating a tax saving which would otherwise have benefitted the plaintiff's decedents. The escrow agreement, however, referred to the net "tax saving,

if any," and to the net "actual" tax saving, and there was none. There was no express agreement not to merge, and the only relevant implied agreement was to act in good faith. Cf. *Stop & Shop, Inc.* v. *Ganem*, 347 Mass. 697, 704-705 (1964) ; *Neofotistos* v. *Harvard Brewing Co.*, 341 Mass. 684, 689 (1961). The judge found no breach of that agreement, and we agree.

*Judgment affirmed.*

LIACOS, J. (concurring in part and dissenting in part). To the extent the majority opinion generally states the principles of law pertaining to this matter, I have no major disagreement. Nor do I disagree with the court's view as to the disposition of the "Paul Revere claim" stated in paragraph 5 of the opinion, and hence concur therein. My disagreement with the majority opinion is as to its holding that the misallocation of the burden of persuasion is but harmless error. I would remand this case for reconsideration by the trial judge in light of the majority's opinion and in light of further considerations set forth briefly here.

This record shows that the plaintiff contested the validity of other fees charged by the law firm as well as the fee of $760,000 discussed in this appeal. Although the latter fee is the only one in issue on appeal, the other (and lesser) fees charged arose out of the same relationships and were contested below as being neither fair nor reasonable. The judge made as to each of such other fees specific findings that they were "fair and reasonable." In light of these findings contrasted with the finding of the judge that the fee now in issue was not shown to be "unfair, unreasonable or clearly excessive" or that it lies "at the outer limit of the range of reason and fairness" such latter finding cannot be "interpreted" as a finding that the fee was "reasonable," as the majority suggests. I agree with the majority that the judge made "elaborate findings of fact." He was also meticulous and precise in the way he approached the matter. I would give him credit also for meaning what he says. Thus, when he further stated that

he was "not persuaded, and has no firm and definite conviction" that the tax case fee "was unreasonable, unfair or clearly excessive in the circumstances," I would take that to mean his mind was in relative equipoise on the issue. See *Sargent* v. *Massachusetts Accident Co.*, 307 Mass. 246, 250 (1940). In such a case the proper allocation of the burden of persuasion on the defendant law firm would appear crucial to the ultimate findings of the judge. Since the judge misallocated the burden of proof on this issue (as the majority and I agree), I cannot agree that this error was "harmless" to the plaintiff's cause. On this aspect alone, the matter ought to be remanded for clarification or further findings by the judge.

I would go a step further, although that additional step is not crucial to my views. While there was some dispute between the parties as to the nature of the fiduciary relationship between the law firm and the stockholders of Thompson Wire, the judge found that there were involved a number of relationships fiduciary in nature. First, partners of Hale and Dorr were trustees of sixty-one per cent of the 9,000 shares to be sold by Thompson Wire; second, these same partners acted in a fiduciary role as selling agents for the stockholders of Thompson Wire; third, one partner of Hale and Dorr was an officer and director of Thompson Wire for a number of years; fourth, the relationship between the defendant partners of Hale and Dorr and the former stockholders of Thompson Wire as to this fee was a fiduciary relationship; fifth, the entire agreement, escrow agreement and release of funds were managed by Hale and Dorr partners. The record also shows that Hale and Dorr partners managed the entire transaction and retained their own firm to handle the § 531 tax matter. The case is replete with fiduciary relationships and some degree of self-dealing. This is not to say that there was anything unethical involved. But one wonders whether such an arrangement ought to be dealt with, as the judge does and the majority opinion seems to accept, as an arrangement where the fee involved a "voluntary contractual relationship." While the agreement to retain counsel

might be viewed as voluntary, the agreement on fees was only that they be "fair and reasonable." In these circumstances plus the fact (as the judge found) that Thompson Wire was not a major client of Hale and Dorr and the average annual fee billed to Thompson Wire prior to this case was $4,000, a finding of a voluntary arrangement as to a fee of this magnitude might properly be viewed as unwarranted. One need not explore this matter at length here. Suffice it to be said that a healthy degree of skepticism on the claim of "voluntariness" is in order — and that such skepticism is relevant to whether the burden of proof was met by the defendant law firm.

Last, the absence of a contingent fee agreement as required by the rules of this court seems significant on the question of how "voluntary" this fee arrangement was in fact. The findings of the judge create an inference that it was a contingent fee without prior agreement when he states that the $760,000 fee reflects twenty per cent of the saving on the tax in the § 531 case and ten per cent of the saving on interest, or seventeen per cent of the "total saving." He found further that such fees were often based on the tax saving, and that a fee of fifteen to twenty per cent "undoubtedly would have been fair and reasonable in this case if it had been agreed upon in advance by a knowledgeable taxpayer." It was not so agreed on.

In light of these factors, the cautious posture taken by the judge, and his marginal findings on the issue, the majority's view seems open to substantial doubt when it says the judge's error as to burden of proof was harmless. The more appropriate disposition not only for the benefit of the parties but for the benefit of bench and bar alike would be to remand this matter for further consideration. "It is difficult to conceive of anything more likely to undermine public respect for the administration of justice than a wide spread suspicion that the courts are aligned in aiding the distribution among counsel of excessive proportions of the funds of those who are unfortunate enough to become involved in controversy." *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939).