JOHN F. MULHERN vs. MARTIN J. ROACH.

Middlesex.  April 10, 1985. — July 10, 1985.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Attorney at Law*, Compensation. *Eminent Domain*, Compensation of attorney.

Discussion of the standard for determining the fair and reasonable value of an attorney's services to a former client. [325-327]

On appeal from the judgment in an action by an attorney seeking to recover a fee for his services in representing a former client in an eminent domain proceeding, it was held that the judge erred in giving relatively little consideration to the circumstances that he was not setting a fee on a contingent basis and that the attorney had failed to establish the amount of time he had expended on the matter, that the judge erred in excluding evidence of the amount of time spent by the attorney's adversaries in the eminent domain proceeding, and that the $350,000 awarded to the attorney was excessive beyond the range of any reasonable discretion. [327-331]

CIVIL ACTION commenced in the Superior Court Department on August 14, 1980.

The case was heard by *Jeremiah J. Sullivan*, J., sitting under statutory authority.

*Ferdinand C. Mauet* (*Pamela C. Slater* with him) for the defendant.

*Harry L. Manion, III*, for the plaintiff.

CUTTER, J. Mr. Mulhern in this action begun August 14, 1980, seeks to recover an attorney's fee and expenses for representing Roach in a proceeding to recover for two takings by eminent domain of land in Newton owned by Roach. In a trial without jury before a probate judge sitting by designation in the Superior Court, Mr. Mulhern was awarded a fee of $350,000, with interest from the date of the complaint. Roach's appeal is before us.

Two takings were made by the Newton Redevelopment Authority (NRA), one in May, 1969, and the other in December, 1970.[1] The premises (the locus) were to be used in connection with commercial development projects to be assisted in part with Federal funds and in part with State money. The locus[2] then was in a residential zone. NRA awarded Roach a pro tanto amount of $214,000, somewhat more than fifty-seven cents a square foot (see n.2). Actions to recover damages for the taking were then instituted and, after a considerable lapse of time, were tried for five days before a Superior Court judge in June, 1976, without a jury, under the then existing statute (which permitted both a nonjury and jury trial). G. L. c. 79, § 22, as appearing in St. 1973, c. 983, § 1. That judge assessed damages at $559,481, or about $1.50 a square foot. A seven-day jury trial followed in September, 1977. Damages were assessed then at $1,186,101, or about $3.20 a square foot.

The present plaintiff, Mr. Mulhern,[3] had entered the eminent domain cases in December, 1975, after Roach had been trying to settle the cases himself with a minimum use of lawyers.

[1] The parties to the eminent domain proceedings agreed to treat the two takings as a single taking. The two proceedings were tried together. See *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.,* 337 Mass. 433, 434 (1958).

[2] The locus, consisting of about 373,000 square feet of land in Newton Lower Falls near the junction of Route 128 and Washington Street, had been acquired largely in years prior to 1966, the latest acquisition in 1966 for about thirty-four cents a square foot. The eminent domain proceedings were reviewed in this court in *Roach* v. *Newton Redevelopment Authy.,* 8 Mass. App. Ct. 618 (1979), aff'd by the Supreme Judicial Court, 381 Mass. 135 (1980).

[3] As the judge found, Mr. Mulhern had engaged in practice in Boston after October, 1956. At one time he had served as a railroad litigation attorney, and then for several years as an assistant district attorney in Suffolk County, and thereafter he had been in private practice with his brother. He had been commissioner of real property for the city of Boston and, after 1974, he had been general attorney for the Boston Redevelopment Authority where he engaged in many tax and eminent domain matters involving the "value of real property." Mr. Mulhern testified that he was "a full-time employee with the authorization to take outside cases." His salary in 1976, he agreed, was $28,300, later increased to $33,388 and (in 1980) to $35,888, paid by the Authority. Mr. Edward I. Masterman, an experienced Boston lawyer specializing in eminent domain cases, described Mr. Mulhern

Virtually nothing had been done by attorneys in preparing the cases for trial, although Roach's son, Richard, had gathered substantial relevant data. There had been little (if any) discovery undertaken. In November of 1975, Roach appeared pro se before a Superior Court judge (Judge A) and sought a continuance.[4] The cases were continued until January, 1976, but were marked for no further continuance.

Mr. Mulhern had known Roach socially as a friend. In December, 1975, just prior to the time the cases were to be called for trial, Roach got in touch with Mr. Mulhern and retained him to deal with the cases, which then were not ready for trial.[5]

In the present action by Mr. Mulhern to recover his fees, the trial judge made findings, which do not seem greatly to be disputed by Roach except with respect to (a) the arrangements in fact agreed between Roach and Mr. Mulhern about the charges by the latter for his services; (b) the complexity of the issues involved in the eminent domain cases, a matter which Roach viewed on a somewhat different basis than the trial judge,[6] and (c) the determination by the judge of the fair

---

(against whom Mr. Masterman had tried such cases) as "an outstanding trial lawyer . . . perhaps the best trial lawyer the" Boston authority had.

[4] Roach testified that he had gone to court with a lawyer then retained by him to work on the cases at a rate of forty dollars an hour, "win or lose." The lawyer then wanted Roach to sign a contingent fee agreement, instead of the prior arrangement. Roach discharged the lawyer and saw Judge A by himself.

[5] Mr. Mulhern was faced at once with the difficult task of obtaining a further continuance on the unprepared cases from another Superior Court judge, who granted a continuance only after Judge A had agreed to a continuance on terms to compensate the Authority's counsel for extra effort caused by the continuance and to relieve NRA of a significant amount of interest.

[6] There were unquestionably difficult problems involved in the eminent domain cases. The evidence showed, however, that Mr. Mulhern received substantial assistance from comprehensive records and other material gathered by Richard Roach and ideas suggested by him. Many exhibits introduced at both trials were of a type usual in eminent domain trials. The obstacles to be overcome in the eminent domain cases were discussed at length in evidence before the trial judge and he had before him the decisions of this court and the Supreme Judicial Court. He, on some of the evidence,

value of Mr. Mulhern's services, a matter discussed below in parts 1 and 2 of this opinion.

As to the first of these disputed matters, it is clear that the judge, on conflicting evidence, did not believe Roach's testimony that Mr. Mulhern had agreed to represent Roach for forty dollars an hour. On the contrary, the judge found that it was agreed that Roach and Mr. Mulhern "would work out the details and [Mr.] Mulhern's compensation at a later date." This finding was justified upon the conflicting evidence. The second matter, in view of our disposition of the case, is sufficiently dealt with in note 6, *supra*.

1. *The standards to be applied.* Roach's principal contention on this appeal is that the trial judge did not apply the proper standards in determining the fair value of Mr. Mulhern's services. He argues especially (see part 2 of this opinion, *infra*) that the judge in making his determination gave seriously inadequate attention to the amount of time reasonably expended by Mr. Mulhern.

(a) Mr. Mulhern is not entitled to recover on a contingent fee basis, for he concedes that he had no written contingent fee arrangement under Rule 3:05 of the Supreme Judicial Court, as appearing in 382 Mass. 762 (1981); see also Rule 3:07, DR 2-106, *id.* at 772. An attorney, however, is not barred from recovering the fair value of his services because of the absence of a contingent fee agreement. See *Young* v. *Southgate Dev. Corp.,* 379 Mass. 523, 525-526 (1980); *Guenard* v. *Burke,* 387 Mass. 802, 806 (1982). There thus is no question that the issue before the trial judge was the fair and reasonable value of Mr. Mulhern's services, taking into account all relevant circumstances.

(b) Because the award of fees is essentially on a quantum meruit basis, see *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 575-576 (1980), aff'd, 384 Mass. 803 (1981), the standard of valuation to be applied is much influenced by

reasonably could have concluded that the cases were much less unusual and complex than his findings would indicate. There is no doubt, however, that Mr. Mulhern handled the issues in fact raised with competence. The judge's findings on the complexity of the case, in and by themselves, did not constitute reversible error.

*Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933), quoted in the margin.[7] See also *Muldoon* v. *West End Chevrolet, Inc.,* 338 Mass. 91, 95-97 (1958). In the *Cummings* case, attorneys had testified (*id.* at 567-568) without objection to their opinions about the value of Mr. Cummings's services which had consumed only at most fifteen hours. The range of the opinions of value of the services lay between $6,500 and $8,500. A Superior Court judge had determined the services to be worth about $5,300 and that determination was sustained.[8]

The *Cummings* case has been frequently cited. See, e.g., *McLaughlin* v. *Old Colony Trust Co.,* 313 Mass. 329, 336 (1943), where the opinion noted that "there was no evidence that the services of the petitioners were in special demand greater than the demand for the services of other competent practitioners" and that much of the attorney's work was somewhat preliminary, with the consequence that the requested fee, see *id.* at 330, 337, was cut in half; *McInerney* v. *Massasoit Greyhound Ass'n,* 359 Mass. 339, 352 (1971), where the opinion said that the "*Cummings* case provides a great deal of well advised flexibility to attorneys in setting fees, but it does not give a total carte blanche," with the consequence that a fee

---

[7] In that case, Mr. Justice Crosby said, "In determining what is a fair and reasonable charge to be made by an attorney for his services many considerations are pertinent, including [1] the ability and reputation of the attorney, [2] the demand for his services by others, [3] the amount and importance of the matter involved, [4] the time spent, [5] the prices usually charged for similar services by other attorneys in the same neighborhood, [6] the amount of money or the value of the property affected by controversy, and [7] the results secured. Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services. The judge who presided at the trial and heard the testimony of the witnesses was in a position to decide the credence and weight to be given to their testimony. In view of the entire evidence we are unable to reach the conclusion as contended by the defendant that the finding of the trial judge was excessive or unreasonable as matter of law."

[8] In the present case, objection was made in behalf of Roach (a) to the admission of the opinion of Mr. Masterman (see note 3, *supra*), and (b) to the exclusion of testimony offered for Roach of the time expended and charges made by able and well-known counsel for the NRA, retained on a contract basis in opposing Roach's eminent domain claims and on the appeals from the court awards.

deemed excessive was materially reduced; *First Natl. Bank* v. *Brink,* 372 Mass. 257, 261, 266-267 (1977);[9] *Darmetko* v. *Boston Housing Authy.,* 378 Mass. 758, 764 (1979); *Kane* v. *Kane,* 13 Mass. App. Ct. 557, 560 (1982), where, while acknowledging that "any award made will be entitled to considerable respect on review," it was said that "a calculation of attorney's fees requires an exercise of judgment involving the application of many factors."

The judge gave consideration to the *Cummings* case criteria (see note 7, *supra*) in varying degrees. (1) He was justified in his findings that Mr. Mulhern "brought excellent and special skills" to the eminent domain cases. The testimony as an expert by Mr. Masterman (see note 3, *supra*) warranted the conclusion that, by his professional adversaries in cases against the Boston Redevelopment Authority, Mr. Mulhern was regarded as highly competent. (2) There was little or no evidence of demand for Mr. Mulhern's services by other clients and, indeed, he had been in the Boston authority's full-time service for some years without any indication in the record that his services (either in particular cases or as a long-term associate) had been sought by private practitioners. Of course, Mr. Mulhern's full-time employment might be a discouragement to his private employment in eminent domain cases. (3) The amount involved (and the value of the property affected, see the *Cummings* criterion, numbered [6], note 7, *supra*) were adequately taken into ac-

---

[9] The *Brink* case, involving a Federal income tax matter, approved a fee of $760,000, approximately seventeen percent of the tax saving achieved. The saving was held to be a "noteworthy" result "attributable in major part to the skill . . . of counsel." The law firm involved had spent only about 2,000 hours on the case, representing a "prudent and efficient use of time." *Id.* at 261. The opinion (at 267) refers to cases "in which time charges were not important" and distinguishes (at 265-266) cases where counsel fees are to be paid by an opposing party, or in a "non-voluntarily forced relationship," as in *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 540-544 (1985), and thus to be fixed on "strictly conservative principles." The *Brink* case charge in 1977, in relation to the 2,000 hours there expended, came to about $380 an hour. In the *Robbins* case, at 544, it was noted that "[w]hen fee awards appear excessive . . . respect for the administration of justice must suffer." See *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939); *Hayden* v. *Hayden,* 326 Mass. 587, 596-597 (1950).

count by the judge. He gave, however, little consideration to the circumstance that the final result in the eminent domain claims was an award perhaps somewhat less than what would have been justified by some comparable sales in the neighborhood of the locus. (4) We discuss below (in part 2 of this opinion) what Roach contends was the inadequate consideration given by the trial judge to the time spent by Mr. Mulhern on the cases. (5) There was no evidence other than the testimony of Mr. Mulhern himself and of Mr. Masterman (see note 3, *supra*), as to the charges made by lawyers in the community for similar services. Mr. Masterman testified that, in similar cases, the appropriate charge would "equal to no less than twenty-five percent to one-third of all sums recovered above the pro tanto [award] including interest," and where it involved (as in the present case) two trials, would amount to "[o]ne third of all sums recovered above the pro tanto including interest."[10] The results achieved were clearly satisfactory. Indeed, Mr. Masterman called the result "almost miraculous."[11]

2. *Consideration of time reasonably expended and absence of any contingencies.* The judge appears to have given relatively little attention to the amount of time expended as a factor to be taken into account in fixing Mr. Mulhern's fee. He recognized that Mr. Mulhern kept no time records and (apart from listing various procedures in which Mr. Mulhern engaged) made as his most specific finding as to hours that Mr. Mulhern

---

[10] Mr. Masterman conceded that he had "very rarely" represented an eminent domain client without a written agreement (which presumably would permit a contingent fee) and, indeed, had done so recently only for a bankrupt railroad where his fees were subject to the approval of the Interstate Commerce Commission and a United States district judge.

[11] The whole record suggests that NRA had set the pro tanto award in unrealistic fashion and at far too low a figure. A practice of doing so, of course, means that the payment of a contingent fee, or any fee, based on a percentage of the excess of the recovery above a too low pro tanto award, will lead to attorneys' fees unnecessarily costly and detrimental to the landowner. The practice of an earlier period (of purely nominal awards) obviously has been improved. Need of improvement, however, perhaps has not been recognized sufficiently by all taking authorities. See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 190 n.2 (1956).

"did spend a great deal of time analyzing the" facts, documents, and the law and in cooperation with successor counsel.[12] Mr. Mulhern did have a full-time job for the Boston Redevelopment Authority, and Mr. Mulhern agreed that, during his work for Mr. Roach, he took only two days' leave of absence from his regular work. He never has reconstructed in written form the hours expended on Roach's cases.

At no place in his "Findings and Order" does the judge give significant attention to the circumstances that, on a quantum meruit basis, Mr. Mulhern was subject to no contingency and ran no practical risk of lack of any compensation if he did not recover at least the pro tanto award for Roach. Mr. Mulhern without doubt would have been entitled to at least a fair hourly compensation for his time prudently spent, even if the recovery had been less than the pro tanto award. The judge seems to have proceeded without recognition that Mr. Masterman's testimony about a reasonable fee was based on Mr. Masterman's own experience in which he had made charges essentially always on a contingent fee basis. See note 10, *supra.*[13] Indeed, Mr. Mulhern admitted that, in an effort to straighten out the displeasure of the senior Roach at the former's bill, he had offered to pay $40,000 to Richard Roach from his fee.

The trial judge excluded testimony (about the hours spent ·by him and his firm) of a senior partner of a substantial Boston firm. He and his partners and associates had represented NRA

---

[12] Roach discharged Mr. Mulhern as counsel upon being sent by the latter a bill on April 11, 1979, which Roach reasonably could have regarded as essentially upon a contingent fee basis. The bill was for $480,810, which was one-third the total verdict plus interest, or one-third of $1,457,000. After the deduction of the pro tanto award of $214,000, already paid to Roach, the basis of a one-third contingent fee on the excess above the pro tanto award would have been approximately $410,000. The judge's award of $350,000 plus interest from the date of the complaint thus was not very far removed from what Mr. Mulhern would have recovered on a contingent fee basis of the type mentioned in Mr. Masterman's testimony.

[13] The judge also gave no perceptible weight to the probability that the pro tanto award appears to have been set at an unduly low figure, see note 11, *supra,* or to the assistance afforded by Richard Roach's work. See note 6, *supra.* The senior Roach, during the proceedings, paid all the disbursements for experts, transcripts, and other bills.

in the eminent domain cases, including both the 1979 and 1980 appeals. See note 2, *supra*. The evidence indicated that the services performed by Mr. Mulhern's opponents covered (for a longer period than Mr. Mulhern's period of service) every aspect of efforts in which Mr. Mulhern had been engaged. This necessarily involved comparable preparation on the facts, similar briefs, and a like consideration of legal issues. An offer of proof showed that the opponents charged $23,105 for about 414 hours of time billed to NRA. If it be assumed that Mr. Mulhern spent as much as 450 hours on the cases, he would have been paid at a rate of $777 an hour, plus interest, for time amounting to over sixty-four days of seven hours each. Such a rate is more than four times the perhaps unduly generous hourly rate finally allowed to a diligent and successful professor in *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 956 (1st Cir. 1984).[14]

We think the evidence of the time spent by Mr. Mulhern's adversaries was highly relevant in estimating the time which Mr. Mulhern reasonably could have spent on the case and that it was reversible error to exclude it. See *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. at 577 n.5. In the present case, reconstruction of the time reasonably expended by Mr. Mulhern should have been a material, although not decisive, consideration.[15]

---

[14] In the *Grendel's Den* case, at 951-952, the court properly criticized adversely and in strong terms the failure of attorneys, applying for fees, to keep contemporaneous time records. See *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. at 577 n.5. See also *Hensley* v. *Eckerhart,* 461 U.S. 424, 438 n.13 (1983). We cannot emphasize too strongly the importance of reasonable time records, made contemporaneously with the work, as showing whether the time was prudently expended, involved duplication, or had a reasonable relation to the issues. Such records, of course, are very helpful in establishing that the time was really expended, an issue on which an attorney should be prepared to satisfy his client.

[15] We recognize that the *dollar amount* charged by Mr. Mulhern's opponents (who were under contract to NRA to charge at fixed hourly rates, presumably on a substantial number of cases) was less relevant than the *time expended* by the opponents, who as careful lawyers, probably would have expended an amount of time generally comparable to that spent by Mr. Mulhern.

The findings of a trial judge in reaching a judgment about a matter where numerous diverse factors are to be considered, are not lightly to be disregarded. See the *McInerney* case, 359 Mass. at 352; *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 16-18 (1980); *Kane* v. *Kane,* 13 Mass. App. Ct. at 560; *Meghreblian* v. *Meghreblian,* 13 Mass. App. Ct. 1021, 1023-1024 (1982). See also Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). We think, however, that, when judicial review of an award of an attorney's fee takes place, it is proper to consider whether the judge's determination reasonably has taken into account all appropriate factors. We also may consider whether (because all factors have not been adequately considered) the decision under review reaches a result seriously beyond any reasonable range.

We recognize those factors which the judge considered in appropriate fashion and the generally successful result achieved by Mr. Mulhern. It is plain also, from the record, that Roach in various respects may not have been an easy client with whom to deal and that he had retained a succession of attorneys from whom he later parted. Mr. Mulhern (see note 5, *supra*) extricated Roach from serious difficulties. We think, however, that the trial judge gave inadequate consideration to the circumstances (a) that he was not setting a fee on a contingent basis; and (b) that Mr. Mulhern had not established the important element of the time expended by him. Beyond that, examination of the record leaves the panel "with the definite and firm conviction that a mistake has been committed," see *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976), and that the award was excessive beyond the range of any reasonable discretion. See *Roche* v. *Boston Safe Dep. & Trust Co.,* 391 Mass. 785, 793 (1984), where it was said that, in reviewing "a judge's ultimate findings and conclusions," it must be determined "whether they are clearly erroneous or inconsistent with the relevant legal standards."

It would be inappropriate for this court to set the amount of Mr. Mulhern's fee. The panel also are of opinion that we should not fix now any maximum amount within which the fee could not be deemed excessive. Accordingly, we remand

the whole case for a new trial on all issues, before a different judge, applying principles consistent with this opinion.

3. Other issues argued need not be considered, either (a) because of the decision which we reach ordering a new trial, or (b) because they do not appear to have been raised before the trial judge.

> *Judgment reversed.*

> *Case to stand for further proceedings consistent with this opinion.*