JOHN B. CUMMINGS *vs.* THE NATIONAL SHAWMUT BANK
OF BOSTON.

Bristol.    October 23, 1933. — December 27, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Practice, Civil,* Motion to strike out evidence, Exceptions, Findings by
judge, New trial. *Attorney at Law,* Compensation. *Evidence,* Of
value of services; Opinion: expert; Admitted without objection.

Where opinion testimony by expert witnesses was admitted without ob-
jection or exception, there was no error in the denial of a motion,
presented at the close of the evidence, that such testimony be struck
out on the ground that the experts had based their opinions upon
facts which were not in evidence; and such testimony was entitled
to its probative force.

In determining what is a fair and reasonable charge to be made by an
attorney for his services, many considerations are pertinent, includ-
ing the ability and reputation of the attorney, the demand for his
services by others, the amount and importance of the matter in-
volved, the time spent, the prices usually charged for similar services
by other attorneys in the same neighborhood, the amount of money
or the value of the property affected by controversy, and the results
secured; neither the time spent nor any other single factor is neces-
sarily decisive of what is to be considered as a fair and reasonable
charge for such services.    Per CROSBY, J.

At the hearing by a judge without a jury of an action by an attorney
for legal services rendered to the defendant, it was proper to refuse
rulings requested by the defendant to the effect that on all the evi-
dence a fair compensation for the plaintiff's services did not exceed
a certain sum per hour, and that, in view of the nature of the services
required of the plaintiff, "the only elements to be considered in de-
termining a fair compensation are the actual time and labor in-
volved": the question, what was fair and reasonable compensation
for the plaintiff's services was a question of fact to be decided on all
the evidence.

On all the evidence at the hearing above described, including evidence
that the plaintiff was retained to collect about $160,000 due the de-
fendant upon promissory notes, that the plaintiff brought an action
on the notes, collected about $66,000 and, as the action was about to
be reached for trial, procured a judgment for the balance due by agree-
ment with the maker of the notes, that the total time spent by the
plaintiff on the matter was from twelve to fifteen hours, including
time spent waiting for trial; and testimony by members of the bar
that in their opinions the value of the services which the plaintiff

testified he had performed was from $6,500 to $8,500, it could not be said that a finding for the plaintiff in the sum of about $5,300 was excessive or unreasonable as a matter of law.

No abuse of discretion appeared in the denial of a motion by the defendant for a new trial of the action above described on the grounds that the finding was excessive and that the trial judge was in error in refusing certain requests for rulings.

CONTRACT. Writ dated January 20, 1932.

The action was heard in the Superior Court by *Hanify,* J., without a jury. Material evidence is stated in the opinion. The defendant's fifth and sixth requests for rulings were as follows:

"5. Upon all the evidence a fair compensation for the plaintiff's services does not exceed $20 an hour.

"6. In view of the nature of the services the plaintiff was called upon to perform, the only elements to be considered in determining a fair compensation are the actual time and labor involved."

The judge found for the plaintiff in the sum of $5,300.09. The defendant alleged exceptions.

*W. T. Snow,* for the defendant.

*J. W. Cummings, 2d,* for the plaintiff.

CROSBY, J. This is an action brought by a lawyer to recover for legal services rendered the defendant, and for certain expenses incurred in connection with an action brought by the defendant against the Border City Manufacturing Company. The action was tried before a judge of the Superior Court without a jury who found for the plaintiff in the sum of $5,300.09. During the course of the trial the defendant excepted to the refusal of the judge to strike out certain testimony. The defendant also excepted to the refusal of the judge to grant certain requests for rulings and to allow a new trial.

It appears that prior to November 9, 1929, the Border City Manufacturing Company owed The National Shawmut Bank of Boston $200,000 evidenced by two promissory notes, one for $65,000 and the other for $135,000. Both notes were overdue on November 9, 1929. After applying to the indebtedness of the $65,000 note the sum of $39,980.26

on deposit with the bank, the indebtedness was $25,019.74 on that note and $135,000 on the other.   On the above date the defendant placed with its general counsel for collection the balance of its claim and authorized its general counsel to employ the plaintiff to collect the balance by an action. The plaintiff was so employed and was directed to begin an action at once on the two notes held by the bank.   In accordance with this direction he brought an action in the Superior Court in which the bank was named as plaintiff, the Border City Manufacturing Company was defendant, and the B. M. C. Durfee Trust Company was named as trustee.   Service was duly made upon the defendant Border City company and trustee.   Between November 12, 1929, and December, 1930, many letters passed between the plaintiff and the general counsel and the vice-president of the bank relative to the claim.   On February 18, 1930, the plaintiff received from the treasurer of the defendant Border City Manufacturing Company a certified check for $34,442.91, being the amount attached by trustee process in the hands of the Durfee Trust company and on the same day forwarded it to general counsel of The National Shawmut Bank of Boston.   The plaintiff in behalf of the bank claimed a jury trial and afterwards waived it.   He filed interrogatories to the treasurer of the defendant in that action, which were answered.

On August 14, 1930, the treasurer of the defendant company in the original action notified this plaintiff that he wanted to pay $25,000 on account of the indebtedness of the company to the bank and was told by the plaintiff to send it directly to the bank; this was done.   The plaintiff testified that he spent one and a half or two days waiting for trial in the Superior Court and informed a representative of the general counsel that the case probably would not be reached at that sitting.   The plaintiff also stated that the Boraer City Manufacturing Company desired to pay the balance due on the $65,000 note and inquired of the general counsel if the bank would accept it and they replied in the affirmative.   The plaintiff then received a check for the balance due on the note with interest, which amounted

to $1,317.36, and forwarded it to the general counsel, and the $65,000 note was returned to the plaintiff and was stamped "paid" by the bank. The plaintiff sent the cancelled note and an interest statement to the maker by mail. On October 24, 1930, the treasurer of the Border City Manufacturing Company called upon the plaintiff and gave him a check for $5,000 and requested him to find out if the bank would reduce the interest rate on the balance of the indebtedness. The plaintiff sent this check to the general counsel of the bank to be applied on the note of Border City Manufacturing Company and wrote for instructions relative to the reduction of interest, stating that the case was on the trial list for the next session without jury in Fall River. The general counsel made reply to this letter and also stated that the plaintiff should obtain judgment as soon as possible unless notified to the contrary. The plaintiff on November 3 and 4, 1930, spent a day and a half to two days at the Superior Court waiting for the case to be reached. At that time he was informed by counsel for the Border City company that the company did not wish to have the action tried because of the publicity and because it would injure the credit of the company. Thereupon an agreement for judgment was prepared and filed in court which recited that judgment for the bank in the sum of $102,324 with costs in the sum of $31.35 was to be entered forthwith. The plaintiff mailed a copy of the agreement to the general counsel of the bank. The plaintiff also had correspondence with the vice-president of the bank respecting its claim against the Border City Manufacturing Company.

The plaintiff introduced in evidence interrogatories which he filed and the answers of the defendant thereto. In its answers the defendant admitted it authorized the employment of the plaintiff and stated that after judgment it had collected from the Border City Manufacturing Company between December 20, 1930, and September 15, 1932, the sum of $33,307.09 to be applied on the judgment. During the course of the trial the plaintiff testified at length respecting the services he had rendered for the defendant in the action brought in its behalf against the Border City

Manufacturing Company and then testified that in his opinion a fair and reasonable charge for such services was $6,785.62, which sum with disbursements of $13.30 made a total of $6,798.92. On cross-examination he testified that he might have spent altogether twelve or fifteen hours on the matter. On his direct examination he had already testified that he had on two different occasions spent one and a half to two days waiting for a trial in the Superior Court. He further testified on cross-examination that in arriving at his opinion as to the fair value of his services he gave very little attention to the time element which he considered insignificant, and could apportion no part of his charge to it. "He considered the amount involved and the amount subsequently received by the National Shawmut Bank as the most important elements to be considered in determining the charge. He considered the fact that the bank was unable to do business with the defendant [Border City Manufacturing Company] and turned it over to him to make it do business and the fact that he did make it do business as important. The only other element he considered was the customary charge of the Fall River Bar Association as established by its schedule of fees in collection cases."

Three members of the bar called by the plaintiff testified as to the fair value of the services which the plaintiff testified he had rendered and gave their reasons therefor. The first stated that in his opinion the services were worth $7,000 to $8,000. The second stated that he had heard the testimony of the plaintiff and, assuming the facts to which he testified to be true, the fair value of the services was $8,500. The third testified that, having in mind the testimony of the plaintiff, in his opinion the fair value of the services was between $6,500 and $7,000. At the close of the evidence the defendant submitted a motion, in substance, that the evidence as to the value of the plaintiff's services as testified to by the three witnesses above referred to be struck out. In support of the motion the defendant contended that the opinion of these witnesses was arrived at by taking into consideration facts which were not in evidence. The mo-

tion was denied subject to the defendant's exception. This exception cannot be sustained. If the defendant deemed the evidence incompetent it was its duty to object to it and save an exception to its admission when it was offered. It was too late to raise a question as to its admissibility by a motion to strike it out after it had been admitted without objection or exception. In these circumstances the testimony was entitled to its probative effect. *Hammond* v. *New York, New Haven & Hartford Railroad,* 211 Mass. 549, 551. *Orpin* v. *Morrison,* 230 Mass. 529, 531, 532. *Westport* v. *County Commissioners,* 246 Mass. 556, 562, 563. *Ferris* v. *Ray Taxi Service Co.* 259 Mass. 401, 405. *Crowley* v. *Swanson,* 283 Mass. 82. In support of the motion the defendant cites *Payne* v. *Springfield Street Railway,* 203 Mass. 425, 433, where at the close of the evidence the judge directed that the testimony of a witness be struck out. It does not appear that the judge acted upon any motion or request. In the case at bar it is to be assumed in the absence of any evidence to the contrary that the judge, in considering the testimony of the witnesses as to the value of the plaintiff's services, correctly instructed himself as to what was proper to be considered in determining the issue involved and what part of it should be disregarded.

The defendant also at the close of the evidence presented ten requests for rulings. The first four and the tenth were granted, and the others were denied. The fifth request that upon the evidence a fair compensation for the plaintiff's services does not exceed $20 an hour was rightly denied. It was a question of fact for the judge to decide what was fair and reasonable compensation for the services rendered. The sixth request could not properly have been granted; the value of the plaintiff's services was not limited to the actual time or labor involved. As to requests 7, 8 and 9 the judge states they were denied as the facts upon which they are predicated are not found to be true. The plaintiff was employed by the general counsel for the plaintiff in the original action with its knowledge and consent, and was entitled to fair and reasonable compensation for

the services rendered.  The judge ruled in accordance with the defendant's first request that the plaintiff was entitled to receive only a reasonable compensation for what he did in consequence of his employment.  "The principles of law applicable to claims of attorneys for services are not different from those applicable to claims of surveyors, or mechanics, or farmers."  The above quoted words are taken from the opinion of this court written by Chief Justice Knowlton in *Blair* v. *Columbian Fireproofing Co.* 191 Mass. 333, at page 336.  The requests of the defendant which were granted fully protected its rights.  The other requests could not properly have been given.  The exceptions to their denial must be overruled.

In determining what is a fair and reasonable charge to be made by an attorney for his services many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured.  Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services.  The judge who presided at the trial and heard the testimony of the witnesses was in a position to decide the credence and weight to be given to their testimony.  In view of the entire evidence we are unable to reach the conclusion as contended by the defendant that the finding of the trial judge was excessive or unreasonable as matter of law.

After the finding of the trial judge had been made the defendant filed a motion for a new trial on the grounds that the amount of compensation awarded the plaintiff is excessive, and that errors of law were committed during the hearing and subsequently in the refusal of the judge to grant certain rulings requested by the defendant.  The motion was denied subject to the defendant's exception. The question whether a motion for a new trial shall be

granted rests in the sound judicial discretion of the presiding judge. There is nothing in the present case to show that such discretion was not properly exercised.

*Exceptions overruled.*