Cheryl S. ANAPOL, Plaintiff
vs.
Walter K. ANAPOL, Defendant

No. D81-505

Probate and Family Court
Department/Bristol
County Division
Commonwealth of Massachusetts

February 18, 1983

Monroe Inker, counsel for plaintiff.
Richard G. Hoffman, counsel for Walter
Anapol.
Kenneth Tatarian, counsel for Cliftex.

**MEMORANDUM OF
OPINION ON PLAINTIFF'S
AMENDED MOTION FOR
SANCTIONS, COSTS AND
ATTORNEY'S FEES**

This divorce case has only progressed to
the point where discovery is just now
being completed. Yet, it has been hotly

battled in the Superior Court, the Probate and Family Court and has also been before single justices in both the Appeals Court and the Supreme Judicial Court. This Court now must address the matter of whether it should award reasonable expenses, including attorney's fees, against a **non-party** deponent, Cliftex Corporation, incurred by the plaintiff in her pursuit for discovery.

The plaintiff filed her divorce complaint against the defendant on or about March 26, 1981. The defendant is a twenty-five percent (25%) owner in Cliftex Corporation, hereinafter called "Cliftex", a closely held corporation. The defendant's ownership in Cliftex provides a substantial portion of the marital assets in this case.

It appears that the stock in Cliftex is owned by two brothers Anapol and two brothers Nicolaci. Each owns twenty-five percent (25%) of the capital stock of Cliftex. Cliftex has sought to intervene in the divorce case between the plaintiff and the defendant, and as far back as May 11, 1981, this court denied such a motion to intervene.

Since that time, Cliftex has strenuously and repeatedly sought to block each and every attempt made by the plaintiff to obtain information necessary and vital to the preparation of her suit and highly relevant and material to the issues in her claim under General Laws, Chapter 208, Section 34, the so-called "Alimony" or "Division of Marital Assets" statute. No less than eight subpoenas have been served on Cliftex and on its various officers and directors. All of these have been met with objections and with motions to quash that have been the subject of a number of hearings over the past nineteen or so months.

On or about July 23, 1982, the plaintiff filed a motion for an order compelling discovery which would require the Keeper of the Records of Cliftex to produce certain enumerated documents. On August 17, 1982, this court granted the plaintiff's motion aforesaid.

It is important to note that Cliftex brought an action in the Superior Court Department, Suffolk County Division, No. C.A. 50642, which sought to prevent the production of said documents to the plaintiff by two non-party deponents, State Street Bank and Trust Company and First National Bank of Boston, each of which was a depository and carried on a banking relationship with Cliftex. The documents are sought in connection with the plaintiff's divorce action to ascertain the value of the defendant's financial interest in Cliftex. This Court (Rotenberg, J.) was assigned by the Chief Administrative Justice to sit as a Superior Court Justice, pursuant to General Laws, Chapter 211B, Section 9, and, after hearing, entered judgment for the two defendant banks on August 17, 1982. This Court fashioned an elaborate ORDER specifically designed to protect, secure and safeguard the subpoenaed records of Cliftex. Reference is made to the records and decision in that Superior Court case described **supra.**

Cliftex subsequently sought stays of proceedings in the Probate Court and before a Single Justice of the Appeals Court all of which were denied after hearing.

A new subpoena, substantially in the same form as the two earlier ones dated November 4, 1981, and June 30, 1982, was served on the Keeper of the Records of Cliftex on October 19, 1982, giving notice that a deposition would be held about six weeks later, on November 9, 1982. Cliftex filed no objections, nor any motion to quash this subpoena.

On November 8, 1982, (the day before the scheduled deposition hearing) counsel for Cliftex wrote to plaintiff's counsel that Cliftex would not be producing all of the documents requested in the subpoena.

It is important and significant to note that the order to produce issued August 17, 1982, directed Cliftex to produce certain records. The very same corporate records were listed in the subpoena served on Cliftex on October 19, 1982.

On November 9, 1982, Cliftex produced for examination one Nancy

Brites. She was **not** the Keeper of the Records of Cliftex. Miss Brites produced only a few of the documents called for in the subpoena, and she was unable to testify as to who was Keeper of the Records or that the documents not produced were even in existence. She did testify that some of the documents which were listed in the subpoena had been destroyed. See TRANSCRIPT Hearing, December 16, 1982, Pages 6 - 7.

A motion was then filed for sanctions, costs and attorney's fees, and was marked for hearing on November 12, 1982. On that date the hearing was rescheduled for hearing on November 30, 1982, by the Court. A full evidentiary hearing was then held and on December 4, 1982, this Court rendered an order directing Cliftex to produce the documents subpoenaed and therein listed in Schedule A. Said production was ordered to be made by Joel Anapol, President (Cliftex) or by Walter Anapol, Vice President (Cliftex) at eleven o'clock A.M. on December 13, 1982, at plaintiff's attorneys' offices.

This Court specifically finds that Cliftex Corporation, by its officers, had deliberately and intentionally withheld the listed subpoenaed documents without just cause, until it faced a self-accelerating financial sanction issues by this Court on December 4, 1982.

Between December 4, 1982, and December 13, 1982, Cliftex filed for review before a Single Justice of the Appeals Court and it was heard on December 9, 1982. This petition was denied. Cliftex then brought a second petition before the Supreme Judicial Court on December 10, 1982, which petition was also denied by Justice Wilkins.

It was at this point, December 13, 1982, that Cliftex finally acceded and produced the subpoenaed documents at plaintiff's attorneys' office, as directed, and compliance was effected.

By agreement of counsel the present motion was heard by all of the following methods: sworn testimony, the filing of affidavits, which were admitted to evidence, and by representation of counsel. This motion was heard on December 16, 1982, and again on December 20, 1982. The evidence taken on these two days was reported by an official court stenographer.

Cliftex presents three rather unique arguments, as follows:

**First:** that this Court is powerless to order a **non-party** to pay attorneys' fees and costs under Rule 37 of the Massachusetts Rules of Domestic Relations Procedure, even when a deponent (non-party· deliberately disobeys a direct court order to produce stated documents;

**Second:** that the documents requested have now been produced, there has now been full compliance and, therefore, each attorney should pay for his own attorney's fees and expenses; and

**Third:** that said Rule 37(a)(4) provides in effect that if the opposition to the present motion was **substantially justified,** then attorney's fees and costs should not be ordered.

A particularized need for production of the information sought to be obtained has been fully established by this Court as being wholly relevant and necessary in the plaintiff's preparation for trial of her General Laws, Chapter 208, Section 34 case.

This Court does not ordinarily take so long to issue an opinion after hearing as it has in this case, but the delay was occasioned by the Court's recent hospitalization and surgery.

The Bible tells us in Matthew 7:7, "**Ask and you shall receive; seek and you shall find.**" Those words describe the process of discovery and its aim. The entire thrust for discovery was obstructed and denied the plaintiff for over seventeen months by Cliftex's willful, deliberate and calculated mechanisms which inflicted delay, expense and frustration on the plaintiff.

This Court finds each of the three defense arguments to be non-persuasive.

As to the **First** argument, this Court has explicit authority to order the payment of reasonable expenses and attorney's fees

against a deponent, as well as a party. See Rule 37(a)(4) that states . . . "the court may, after opportunity for hearing,

> require the party **or deponent** . . .
> to pay the moving party the reasonable expenses incurred in obtaining the order including attorney's fees, . . ."

Here the sheriff's return of service indicates that the Keeper of the Records of Cliftex was served in hand with a subpoena duces tecum. Sanctions are available against a corporation if the person designated fails to appear for the taking of his deposition.

> "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs." See **Wilson v. U.S.,** 31 S. Ct. 538, 543 (i.e. the destruction of subpoenaed documents.)

As to the **Second** argument, in sum this argument is specious. It's thrust is, "We've given you all the documents you want; now pay your own legal expenses and costs because that's the American way." Let us remember that Cliftex has not been so amenable and condescending. Rather, it has deliberately and intentionally withheld subpoenaed documents for many months until finally the self-accelerating financial sanction fashioned by this Court has brought about obedience to a lawful court order.

> "The award of attorney's fees under Rule 37 is for the benefit of the party injured by the conduct of the dilatory party, not for the benefit of the parties' attorneys." **Hamilton v. Econo-Car Int'l.,** 636 F.2d 745 (D.C. Cir. 1980). "Attorneys frequently forget the award of expenses is primarily compensatory and not punitive and that eleventh hour compliance with a motion or order does not erase the liability for expenses of bringing the motion." See "**Discovery Practice**" by Haydock & Herr, page 416, Little, Brown &

Company.

The eleventh hour disgorging of information is not a justifiable reason not to pay the expense in obtaining it.

As to the **Third** argument, this argument tries to claim justification in Cliftex's continuing action to block discovery by claiming it was **substantially justified** in its action and, therefore, should be excused from payment of attorneys' fees and costs as provided in Rule 37(a)(4). This argument is no better than its two predecessors. Prior to the compel order being issued, an elaborate protection was fashioned by this Court to insure privacy and security of all of the sought for documents. In fact, after its issuance, no further suggestion was ever made by Cliftex to enlarge, modify or amend the Court's protective language in the handling of all produced corporate documentation. No good reason by the corporation was ever offered to this Court to show how and in what way the corporation would be in any way harmed by its prompt production of the subpoenaed material. This Court may reasonably infer that if the corporation had prevailed in this long and arduous attempt to prevent the production of this financial information, then it would have only helped one individual, the defendant in this divorce, and it would have only hurt one person, the plaintiff, his wife.

Only four persons are in control of Cliftex, and the defendant is one of those four. His older brother is another of the four and this older brother is the principal and leading officer of that corporation.

This Court finds that the claim presented by the corporation in the Superior Court was without prior Massachusetts precedent, but that did not make its corporate action one of good faith. There was here, and throughout the entire history of the defense against discovery, a callous disregard and a gross indifference to the rights of the adverse party, which have caused her to incur legal expenses in the thousands of dollars.

If she had been unwilling to fight for this information, then she would have

been powerless and ill-equipped to present her case for divorce and her claim under **General Laws,** Chapter 208, Section 34. Were it not for her most capable and expert legal counsel in the family law field, the discovered information would not be now available. Since the Court has decided that Cliftex should be ordered to pay attorneys' fees and costs, the Court now turns to the amount of such an award.

The great operative principle of Rule 37(a)(4) is that the loser pays. The party **or deponent** whose conduct necessitated the motion shall be required to pay to the moving party the reasonable expenses, including attorney's fees incurred in obtaining the order.

The plaintiff in this case has engaged the services of a well-known law firm that directs major attention to matrimonial law litigation. It is that firm's established practice to have a partner and an associate work together during all parts of a case. The rates differ between the partner and the associate. This Court finds that the plaintiff agreed to pay a partner of the firm at the rate of One Hundred Fifty Dollars ($150.00) per hour and to pay in addition Ninety Dollars ($90.00) per hour for the time of an associate of the firm.

The partner's time billed out on this claim was $3,337.50; the time for the associate billed out at $2,407.50; the legitimate costs and expenses for sheriff's fees and transcript costs billed out at $504.00, for a total obligation of $6,249.00 owed to the plaintiff's attorneys for claimed costs and attorneys' fees that are limited to the matter with which we are now concerned.

We note that the plaintiff has little or meager assets, apart from the temporary support order entered in this case. The Court also notes that this corporation, Cliftex, has large financial assets and appears to be able to afford the payment of reasonable attorneys' fees and costs, if ordered by this court to do so. The partner representing the plaintiff spent 14.25 hours and 8 hours, for a total of 22.25 hours on this stage of the case, at $150.00 per hour, for a total claimed fee of $3,337.50. The associate spent 26.75 hours on this stage of the case at $90.00 per hour for a total claimed fee of $2,407.50.

In arriving at the award hereinafter made, this Court has carefully considered the enunciated factors contained in the leading case of **Cummings v. National Shawmut Bank of Boston,** 284 Mass., 563; 188 N.E. 489, wherein the Supreme Judicial Court established careful guidelines in determining what are fair and reasonable charges for the services of an attorney. These factors include: . . .

> **"the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by the controversy and the results secured. Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services."**

The ability and capacity of the partner, Paul Perocchi, is well known. He is a co-author of one of the most definitive and authoritative works on **alimony and the assignment of property** that is now available, and this article is repeatedly cited by the Supreme Judicial Court and by the Appeals Court, most recently in **Zildjian v. Zildjian,** 391 N.E. 2d 697 at p. 705. "**Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts**" by Inker, Walsh & Perocchi, 10 Suffolk Law Review 1 (1975).

The value of the marital property involved in this case is extensive. Based on the defendant's income and holdings as disclosed in his financial statement on file in this case, we are dealing with a gross weekly income from Cliftex of $4,519.21.

In addition, his assets total $59,000.00 plus substantial interests in Cliftex, Franklin Realty of New Bedford and Princeton Realty, the value of which has not been determined on the financial statement. The value of the personalty is not determined on the defendant's financial statement either, but is estimated on the plaintiff's statement as totaling $230,000.00.

This Court notes all the tests of criteria set forth in the cases of **Cummings (supra); Hayden v. Hayden,** 326 Mass. 587, (1950), where it is pointed out that the award of fees to a lawyer from a person who did not contract voluntarily should be based on "**strictly conservative principles**" so as to avoid "**undermining Public respect for the administration of justice**"; and the case of **Kane v. Kane,** 13 Mass. Appeals Court 557 (1982), which is clearly distinguishable from this case in that the time expended in this case was necessary, proper and not excessive and an inordinate amount of time was not expended here, there was no duplication of effort, the issues presented here were **not** commonplace in disputes of this character, and the defendant's ability to pay the award of the size entered has been considered by this Court. And, finally, this Court has weighed carefully **who is best able to bear the burden of the legal fees in this proceeding.**

Who, in fact, was the cause of these legal fees? Who, in fact, threw up the many road blocks at both formal and informal attempts by this Court to resolve the discovery problem by agreement and mediation? The blame and the responsibility lies solely, **not** jointly, at the feet of this corporation.

This Court is in the best position to determine the quantum of attorney's fees, for it personally was involved from the outset in the calculated, well thought out, obstructionist activity that was solely designed to prevent discovery.

The matter of discovery itself is based on sound judicial discretion. The amount of attorney's fees is likewise so based.

Something should be said about deterrence. Forward-looking jurisdictions in the federal and state courts are supporting the lower courts in the use of the sanction of reasonable attorney's fees being awarded in appropriate cases in order to keep a trial from being a game of chance, instead of a pursuit for justice.

Contempt proceedings certainly can be used, but the great majority of jurisdictions are now looking to the sanction of attorney's fees being awarded in appropriate cases.

This case is far from over. There may well be times before its completion when this Court's order will be questioned, and properly so, but certainly all concerned here bear the burden of providing that such challenges are not frivolous or designed to delay or impede the course of justice. They must realize that they may well be forced to pay attorney's fees if their course of action is not grounded on faith and fair play.

Finally, we deal with the plaintiff's contractual liability with her own attorneys to pay Six Thousand Two Hundred and Forty-Nine Dollars ($6,249.00).

This Court notes with interest that Rule 37(a)(4) deals with the order for payment of "**reasonable expenses incurred in obtaining the order, including attorney's fees, . . .**" The Court feels that perhaps the word "reasonable", as it relates to attorney's fees, should be inferred, but by the same token, perhaps it was intended that **contracted** attorneys fees, whether "reasonable" or not, are to be paid by the person causing them to be incurred. This Court rushes to say that it does **not** base its award on this latter point, but rather on an examination of the entire written record; on the firsthand observations of the witnesses who testified in behalf of the attorney's fees; by the representation of counsel and their affidavits; and by the fact that not one single witness was offered by the defense at the hearing in opposition to the request for counsel fees; and only after considering the criteria recited in the cases cited herein.

Perhaps too great a reliance is placed

on the **Hayden** case (**supra**) by the defense here, for in **O'Hara v. Robbins**, 432 N.E. 2d 560, in commenting on **Hayden** the Appeals refers to a possible test of 'the compensation paid to public officers for services of a similar character,' perhaps by itself too parsimonious a standard for application in an inflationary period." This Court recognized that the skill. experience and standing of counsel in this case has brought about a highly satisfactory result from utter chaos. The fee charged the plaintiff is in no way excessive, nor are the expenses incurred anything but reasonable.

This Court has not put conclusive weight on the contractual obligation existing between the plaintiff and her counsel, but rather has considered the time reasonably expended, the amount of the hourly fee charged (it being the same amount usually charged in the many other matrimonial cases handled by the plaintiff's counsel), the complexity and tenacity of this warfare and the responsibility involved in a case of this magnitude.

It certainly should be observed, even if slightly, in passing that a failure to pursue with tenacity and full vigor the discovery sought in this case may well have exposed plaintiff's counsel to claims of liability. had the attempt for discovery been abandoned early in these legal skirmishes.

Today marital law cases occupy over fifty percent of all filings in the civil courts nationwide. This type of case has been elevated and recognized as a specialized trial area by all jurisdictions. It is a rapidly evolving field, which demands constant vigilance and continued study and preparation. The specialists who have developed nationwide reputations for competence are entitled to be paid a fair and reasonable award of counsel fees, just as outstanding corporate counsel, eminent anti-trust counsel and gifted patent counsel are paid.

Recognition in one's field comes by perseverance, preparation and skill. In this case the plaintiff's counsel have earned every single penny awarded to them.

Therefore, this Court, after hearing, enters the following ORDER:

Cliftex Corporation shall forthwith pay the sum of Five Thousand Seven Hundred and Forty-Five Dollars ($5,745.00) as attorneys' fees and the sum of Five Hundred and Four Dollars $504.00) as reasonable expenses to the law firm of White, Inker, Aronson, Connelly and Norton, P.C.

This Court in no way intends to deprecate the value of legal services performed by corporate counsel in this case. He did as he was instructed, and the Order this day entered is based solely on the principles enumerated aforesaid, as applied to the principles of law and factors found by me in this case.

**Ernest Rotenberg**
**Associate Justice, Probate**
**and Family Court Department**
**Bristol County Division**
**Massachusetts Trial Court**