**GIL–WAL CORPORATION, et al.**

v.

**PAINEWEBBER, INC., et al.**

**Civ. A. No. 85–2464Mc.**

United States District Court,
D. Massachusetts.

April 9, 1990.

DETERMINATION AND ENFORCEMENT OF AN ATTORNEY'S LIEN

McNAUGHT, District Judge.

This petition to determine and enforce an attorney's lien was filed by Allen C.B.

Horsley, Esquire under the provisions of Massachusetts General Laws, c. 221, § 50. This court may enforce liens created by this statute. *In re Hoy's Claim*, 93 F.Supp. 265 (D.Mass.1950). Petitioner asks that we establish a lien "with respect to certain settlement proceeds to be distributed in the above captioned matter". Petition, ¶ 1. He says, basically, that the clients agreed that he and other employees at Widett, Slater & Goldman, a law firm in the Commonwealth, were to be paid standard hourly rates as "established from time to time in the course of the litigation" together with expenses and disbursements.

The client, represented at the hearing on the petition by Morton Waldfogel (who is also one of the plaintiffs) concedes that there was an agreement, and that the lawyers are entitled to a fair fee, but argues that they have already been paid too much.

■ We are guided by the "standard of evaluation" set forth in *Cummings v. National Shawmut Bank*, 284 Mass. 563, 188 N.E. 489 (1933), since an award here is based on quantum meruit. Pertinent considerations include (1) ability and reputation of the attorney(s), (2) demand for attorney's services by others, (3) amount and importance of the matter involved, (4) time spent, (5) prices usually charged for similar services by other attorneys in the area, (6) amount of money affected by the controversy, and (7) the results. These are not exclusive, nor is any single factor decisive. *Mulhern v. Roach*, 20 Mass.App.Ct. 322, 480 N.E.2d 308 (1985).

Indeed, another factor must be considered in this case. The client contends that the attorneys have already been paid a large sum of money ($191,586.00 for services prior to December 1, 1989 when the attorneys stated that they would withdraw unless paid a balance then due. The case was then on the trial list for January 22, 1990.). At that time the client, through Mr. Waldfogel and Mr. Gildea paid the balance of $59,118.08 then due (which made the total $191,586.00). They agreed, I find, that Gil–Wal would continue to be billed for services through trial or settlement and the client had the right to question reasonable-

ness or accuracy of any bill or bills to be rendered. Apparently the clients were disturbed by the fact that in the past they had been given estimates of probable ranges of attorney's fees, which estimates were greatly exceeded when bills were submitted. In January of 1987 the client was displeased. The argument then was whether discovery work by the attorneys would cost something in the neighborhood of $5,000 to $7,500. In January of 1987 the amount billed to that time was paid, when the client was made to understand that the quoted estimate was for "initial" discovery work. In November of 1988 the attorney estimated that costs through trial would be between "$160,000 and $200,000". The attorney states (Horsley Affidavit, ¶ 21) that the action was expected to be tried in the spring of 1989, but that the filing by defendants of a motion for summary judgment threw that estimate off. The attorneys filed two briefs and argued the matter in June of 1989. Subsequent billing caused another argument. The summary judgment motion, incidentally, was denied. Next there was the dispute in December of 1989 when the attorneys threatened to withdraw.

Trial preparation began. Mr. Waldfogel said (and no dispute was offered by petitioner) he was told that the estimated expense for "trial prep and trial" was $40,000. The case was settled when it was called for trial, and petitioner says that the value of the law firm's efforts is $75,720.00 in fees. The lawyers ask also for $6,097.19 in disbursements. They would like to be paid also a fee of $4,091.00 for efforts expended since the settlement on this fee matter, and $466.13 disbursements. If the attorneys' requests are granted in toto, they will be entitled to a grand total of $277,960.12 ($191,586 already received, plus the $86,374.32 they say they should be given for preparation for trial, the "trial" or settlement, and the handling of this fee dispute. The figure of $86,374.32 is better than double what the client says was the amount forecast—$40,000.00.

First, with respect to the billing through 1989, we will not disturb the "agreement"

which was entered into by the parties. This case history of relationship between client and attorneys presents one episode after another of dispute about the cost of services, and subsequent agreement to pay. They reached final accord on all services and charges through 1989, and satisfaction to that time was achieved. Those disputes were settled—finally. And this Court will not disturb that settlement. We are concerned only with the present dispute: the amount of money which should be paid for work after the 1989 accord.

The hourly rates set for the services of Mr. Horsley and Ms. Russian are without doubt reasonable in the light of the standing of each of them and of rates charged by attorneys with their individual experience in this area of practice. With that I have no problem. As for the "demand for attorney's services by others", there is no evidence, and hence that factor does not enter into our deliberations. We assume that the services of Mr. Horsley and Ms. Russian were "in demand" to the same degree as those of other attorneys practicing in this general locality. That element makes no difference in the ultimate decision.

We know the number of hours for which the clients are sought to be charged, and there is the rub; the hours, and the last factor—the results.

Let it be clearly understood that we do not question the veracity of the lawyers in their statement of the amount of time which they actually spent on the matter, as reflected in the billing computer sheets submitted to the court. Whether the trial preparation or settlement preparation warranted billing the client for all those hours is a real issue.

There are charges which, in my opinion, are questionable. I believe the attorneys were sincere in their belief that the charges were warranted. I simply don't agree with them. There are "review conferences" between "first and second chair" lawyers—the two who would eventually sit at counsel table while the evidence was being presented. I cannot agree with the attorneys that these charges are warranted on this quantum meruit claim. There are other items which are bothersome—charges for revising a letter several times, "review" of documents, etc.

I do not base my decision on the "picky" basis of negating such charges, however. There is a more important factor: the results which were achieved, and what one should expect to be charged for those results in the light of what reasonable amount of time should have been necessary to achieve those results.

The client was led to expect more than what was finally achieved. This is not to say that the result of the negotiations wasn't fair, but it is the fact that the client, rightly or wrongly, was led to believe that the odds were that the recovery would be larger, and that the fee would be lower than it turned out to be. Exhibit K to the Horsley Affidavit is enlightening, in that on November 14, 1988 in the last paragraph of a letter, bright prospects of recoverable damage were pictured [net recovery exclusive of attorneys' fees in excess of $800,000 on a RICO or G.L. c. 110A theory; $350,000 to $500,000 under section 10–b(5)], and a "responsible" estimate for the cost of full preparation and trial was placed in the vicinity of $40,000 to $60,000.

I conclude that the results were less than what was expected, and since full trial was avoided, a reasonable fee for the expenditure of a reasonable amount of time for two lawyers plus assistance by staff people in effecting this settlement, was $40,000.00 plus disbursements of $6,097.19. The client is responsible to the lawyers in this amount: $46,097.19, with interest from this point *forward* at the rate of 12% per annum.

Just last November one of the lawyers wrote that total fees in connection with the case, including trial, would be between $160,000 and $200,000. By the end of the year 1989, the lawyers had received approximately $191,500, and now they wish to receive another $86,374.32 plus $5,255 for expert assistance.

I conclude that on a quantum meruit basis the attorneys should receive the

amount of $46,097.19. I add only that the figure of $4,091 for the work involved in the fee dispute and the disbursements of $466.13 should not be recovered, and hence, are not included within the $46,097.19 figure.